[Crim. No. 663.    Fifth Dist.    Aug. 28, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES VAUGHN COOK, Defendant and Appellant.

A. Jay Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Stephen Cooper and Edward W. Bergtholdt, Deputy Attorneys General, for Plaintiff and Respondent.

STONE, P. J.—Defendant appeals from an order granting probation, which followed his conviction, by a jury, of possession of marijuana (Health & Saf. Code, § 11530) and transporting marijuana (Health & Saf. Code, § 11531).

About 9:30 a.m. on April 4, 1968, Carl Alto, manager of the lounge at the Mount Shasta Ski Bowl, located in Siskiyou County, observed a lone automobile in a remote area of the parking lot. This attracted his attention as there was ample parking space in the area near the lodge; he also noticed that the engine was running, although no one was visible in the car. When he prepared to leave at 5:30, the car was still parked in the same place. He investigated and found defendant lying across the bucket seats, apparently asleep. Alto attempted to rouse defendant but he was semiconscious and unable to talk coherently. Alto and Bob Vaughn, the Ski Bowl manager, and another employee placed defendant in a wire basket stretcher and carried him into the lodge.

Deputy Sheriff Laurence Taylor was called, and arrived about 5:55; Vaughn handed him defendant's driver's license and two small pill containers, labeled Elavil and Stelazine.

Defendant remained incoherent, so Deputy Taylor telephoned Dr. Geyman in Mount Shasta and asked about the effect the pills would have on a person. Dr. Geyman said the drugs were tranquilizers, normally prescribed for people under psychiatric treatment, and that an overdose would induce semiconsciousness, and possibly death. He advised Taylor to immediately take defendant to the county hospital at Yreka for medical attention.

By that time it was snowing hard and there was "a high, strong wind"; Taylor knew the road down the mountain was covered with snow for at least 3 or 4 miles, which made travel dangerous. He therefore made only a "real quick check" of the automobile. He saw two plastic containers with a granular substance in them, a blue dish or cup on the passenger seat, and some pills on the floor. The trunk lid was open and snow was blowing inside onto a suitcase, which he removed to the patrol car and then was able to close the trunk. He locked the car, a two-seat convertible with a snap-on top, and left the keys with Mr. Vaughn so the car could be moved out of the way of a snow plow. After telling Vaughn he would return the next day to pick up the car, Taylor took defendant to the Yreka Hospital.

Taylor did return to the ski lodge the following day, April 5, with Phillip McCaleb, in whose garage he arranged to store the car. Vaughn took the keys from a desk drawer and gave them to him. Taylor unlocked the car and handed the keys to McCaleb, who drove the car to Mount Shasta, followed by Taylor in the patrol car.

In making an inventory of the contents of the car at the garage, Taylor saw an orange-colored pill on the right front seat; he picked it up but it slipped from his fingers and fell behind the bucket seat. He moved the hinged seat forward to retrieve the pill and found three plastic pill bottles and two plastic bags containing leaves and seeds. These proved to be marijuana. Three days later, defendant was arrested and charged with possession and transportation of marijuana.

Taylor testified that he never formally arrested defendant before the marijuana charges were filed; that after taking defendant from the ski lodge to the hospital, he went to the jail and "booked" defendant as under arrest for being drunk or under the influence of drugs, violation of Penal Code section 647, subdivision (f). He explained that before returning to the lodge to impound the car he did not inform defendant of the arrest because "he was still in a semiconscious condition."

■ Defendant's first ground of appeal is that the marijuana was the fruit of an illegal search, made without a search warrant. The Attorney General argues at some length that there was a search incident to a valid arrest. We doubt that the evidence proves a search incident to arrest, but there is no point in discussing whether there was a valid arrest when the officer who discovered the marijuana testified that he made no *search*. He said he was inventorying the vehicle for storage, a routine precautionary police practice for the protection of the officer who stores the car and the garageman who assumes custody.

The question narrows to whether the officer exceeded his authority by impounding the car. We think not. The vehicle, although not abandoned in the colloquial sense, was technically abandoned when defendant, the lone occupant of the car, was taken to the hospital. The registered owner lived in San Francisco and there was no one at the scene to look after the car. Defendant argues that even an abandoned car cannot be removed from a private parking lot unless the lot owner requests its removal as provided in Vehicle Code section 22658. Such a request can be implied, here, in that Vaughn, the lodge manager, gave the car keys to the officer upon his arrival. While it is true the keys were returned to Vaughn, who kept them overnight, the next day he again handed the keys to the officer. It is reasonable to infer that Vaughn delivered the keys to the officer to have the car removed from the ski lodge parking lot.

Even in the absence of an implied request, we conclude that the officer was justified in storing the car for protection from the elements, from car thieves, and from vandals. It would be at odds with common sense to hold that the officer exceeded the scope of his authority in protecting property in these circumstances, and at the same time recognize that he acted properly in saving defendant's life.

To summarize, we hold that the officer acted properly in returning to the lodge to impound the car after taking defendant to the hospital, and in making an inventory of the contents of the car incident to storage. Thus the marijuana found as the result of the inventory was properly admitted in evidence.

We turn to defendant's contention that conceding, *arguendo*, the marijuana was legally admitted in evidence, the record does not support his conviction of either possession or transportation of marijuana.

■ The elements of the crime of unlawful possession are "proof (1) that the accused exercised dominion and control over the contraband, (2) that he had knowledge of its presence, and (3) that the accused had knowledge that the material was a narcotic." (*People* v. *Groom,* 60 Cal.2d 694, 696 [36 Cal.Rptr. 327, 388 P.2d 359].) The only time defendant was seen in the car was when he was found unconscious, lying across the bucket seats. Apparently the car had been parked in the same location since early morning, yet no person was seen in it until 5:30 in the afternoon. There is no evidence that defendant was ever conscious while in the car. that he exercised control over the vehicle and its contents, when or where he got into the car, or that he drove it to the spot where he was found in it, unconscious. Thus the record is devoid of evidence that defendant ever exercised dominion and control over the contraband.

■ Similarly, as to the charge of transporting marijuana, there is no evidence that defendant exercised conscious control over the car. It was registered in the name of Carol Cook, presumably a relative since that is also defendant's surname and the registration certificate bore the same address as that shown on his driver's license. Whether she could have shed some light on defendant's mysterious presence in her car we do not know; she was not a witness.

We deem it significant that defendant was under the influence of prescription drugs properly in his possession, not under the influence of marijuana, at the time he was taken to the hospital, and that there is no evidence that he had a history of marijuana use or possession. Because of this lacuna in the evidence, there is nothing from which to infer that the marijuana under the seat was defendant's, or that he knew of the narcotic character of the substance; the conviction cannot stand on mere speculation.

As the Supreme Court so aptly stated: "Evidence which merely raises a strong suspicion of the defendant's guilt is not sufficient to support a conviction. Suspicion is not evidence; it merely raises a possibility, and this is not a sufficient basis for an inference of fact." (*People* v. *Redmond,* 71 Cal.2d 745 [79 Cal.Rptr. 529, 457 P.2d 321].)

The judgment (order granting probation) is reversed.

Gargano, J., concurred.

A petition for a rehearing was denied September 25, 1969, and respondent's petition for a hearing by the Supreme Court was denied October 22, 1969.