[Civ. No. 35202. Second Dist., Div. Three. Dec. 4, 1969.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ALLEN JAMES FISHBACK, Real Party in Interest.

**COUNSEL**

Evelle J. Younger, District Attorney, Harry Wood and Joel Paul Hoffman, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Mantalica, Barclay & Teegarden and Edward J. Phelan for Real Party in Interest.

**OPINION**

**FEINERMAN, J. pro tem.**\*—Petitioner seeks a writ of mandate directed to respondent court requiring it to annul that portion of its action of July 30, 1969, which suppressed evidence in a criminal prosecution against the real party in interest (hereinafter referred to as the defendant). The petition is made pursuant to Penal Code section 1538.5 subdivision (o).

\*Assigned by the Chairman of the Judicial Council.

In the proceeding pending in the respondent court, the defendant is charged by information with a violation of section 11530 of the Health and Safety Code, possession of marijuana, a felony.

After reviewing the entire record, we have concluded that the respondent court's action in granting defendant's motion to suppress was correct and that the alternative writ of mandate heretofore issued should be discharged and the petition for peremptory writ of mandate should be denied.

On April 4, 1969, Officer Chenault of the Los Angeles Police Department was assigned to work in the vicinity of the Teenage Fair being conducted at the Hollywood Palladium. He was stationed on the top of a 23-story building at Sunset and Vine and was observing parking lots adjacent to the Palladium, one and one-half blocks away, through binoculars.

At approximately 8:45 p.m., Officer Chenault observed three males walking from the north end of a parking lot to the south end of the lot where defendant's 1964 Chevrolet was lawfully parked. One of the three men entered the driver's side of the Chevrolet, remained inside approximately 30 seconds, and exited. A second person then entered the vehicle on the driver's side, remained inside approximately 30 seconds, and exited. During this entire time the third man present stood near the rear of the vehicle. The three persons then left in a southbound direction. Officer Chenault could not determine by what means entry in the vehicle was accomplished, and he did not know if anything was put into or removed from the vehicle. Nevertheless, he was suspicious that a burglary had taken place and notified other officers via walkie-talkie that he believed that somone was breaking into a car and gave a description of where the car was parked. A few minutes later Officer Simms arrived at the spot where the Chevrolet was parked and found that the vehicle was unoccupied. After shining his flashlight on the vehicle, Officer Simms observed that the wind wing on the passenger side was slightly ajar. When the officer touched the wind wing, it pivoted open. Officer Simms noticed loose wires hanging from the dashboard and saw two exposed brackets underneath the dashboard. Based on what he saw and his knowledge of arrests for burglary at the previous year's Teenage Fair, Officer Simms believed that the car had been burglarized and a stereo set taken from the vehicle.

Officer Simms pushed the wind wing open, unlocked the door on the passenger side of the car and entered the vehicle. He testified that his purpose at that time was "to leave a note for the victim, directing him to Hollywood Station to make a report regarding the stolen stereo." A form had been prepared in advance by the police for such situations, and Officer Simms indicated that he entered the vehicle to obtain the name of the registered owner from the registration slip in order to place it on the form.

When asked at the 1538.5[1] hearing why it was necessary to write the name of the registered owner on the form, Officer Simms testified: "We had difficulty prior [*sic*] not having the owner's identity and we would wind up with a suspect and some property and no victim's name to correlate the reports with."

Officer Simms did not find the registration slip on the steering column or on the sun visor. He then opened the closed glove compartment, where he observed a clear plastic bag containing a green, leafy substance which, based on his prior experience, he believed to be marijuana. The officer removed the bag and placed it on the shelf in front of the rear window of the Chevrolet. He then radioed Officer Chenault to keep the vehicle under surveillance. About two hours later, the defendant was arrested when he returned to his automobile and exited from the parking lot. The passengers in defendant's car were also placed under arrest. A subsequent search of the vehicle by police uncovered an unsmoked handrolled cigarette in the front ashtray which also allegedly contained marijuana.

At the 1538.5 hearing the trial judge ruled that the entry by Officer Simms into the automobile was unreasonable. In making his order granting defendant's motion to suppress, the trial judge stated for the record his belief that the police officers could have ascertained the name of the registered owner by running a license check on their radio and could have left the report form with the car owner by placing it in the car through the open wind wing.

The People contend that the "limited search" to obtain the vehicle registration to identify the victim was reasonable under the "extraordinary and exceptional circumstances" of this case. The People further contend that the validity of the search should not depend on the alternative courses of action an officer could have taken, but rather whether the course of action he pursued was reasonable.

When the legality of a search and seizure is raised, the defendant makes a prima facie case when he establishes that the search was made without a warrant, and the burden then rests on the prosecution to show proper justification. (*Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2d 23].) With reference to an automobile, the burden of the prosecutor has been somewhat eased because courts have recognized that "the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." (*Chimel* v. *California,* 395 U.S. 752, fn. 9 at p. 764 [23 L.Ed.2d 685, 694, 89 S.Ct. 2034].)

Accordingly, it has been held that an officer may search a vehicle when

---

[1]Unless otherwise noted, all numerical references are to the Penal Code.

he has reasonable cause to believe it contains contraband or stolen property notwithstanding the absence of probable cause for arrest of its occupants. (*People* v. *Terry,* 61 Cal.2d 137, 152 [37 Cal.Rptr. 605, 390 P.2d 381]; *People* v. *Schultz,* 263 Cal.App.2d 110 [69 Cal.Rptr. 293].) Searches of unoccupied cars have been approved where "Exceptional and unusual circumstances" have created a "pressing emergency" making the police action necessary. In *People* v. *Terry,* 70 Cal.2d 410, 424 [77 Cal.Rptr. 460, 454 P.2d 36], the court stated: "A search of the car, abandoned by an individual suspected of killing a police officer within the last 20 minutes and presumably armed and in flight, would help ascertain whether its former occupant was armed and where he might be located. The pressing urgency of such determinations amply justified the search. Since the search of the car was legal, the fruits of that search were properly admitted." In *People* v. *Smith,* 63 Cal.2d 779, 797 [48 Cal.Rptr. 382, 409 P.2d 222], the court said: "The law recognizes that fresh pursuit of a fleeing suspect who has committed a grave offense and remains dangerous to life and limb may constitute 'exceptional circumstances' sufficient to justify a search without a warrant." Significantly, in both *Terry* and *Smith,* the police action was deemed imperative. No other reasonable alternative was readily available in either case.

The People rely upon *People* v. *Grubb,* 63 Cal.2d 614 [47 Cal.Rptr. 772, 408 P.2d 100], and *Perez* v. *Superior Court,* 250 Cal.App.2d 695 [58 Cal.Rptr. 635], to support their position that "exceptional circumstances" justified the search of defendant's automobile in the instant case. Reference is also made to *People* v. *Marchese,* 275 Cal.App.2d 1007 [80 Cal.Rptr. 525], and *People* v. *Cook,* 275 Cal.App.2d 970 [80 Cal.Rptr. 528], where inventory searches of vehicles for impound purposes were held to be reasonable.

In *People* v. *Grubb, supra,* a car was abandoned during the night and was parked on the wrong side of the road, protruding into a highway, and creating a traffic hazard for oncoming cars. Police officers, looking through the windows of the car, saw no registration slip. The court held that entry into the vehicle for investigation of title and registration under Vehicle Code section 2805 was justified under the exceptional circumstances and that to require the officers to obtain a search warrant "would abort their efforts to protect the safety of the highways." Again, we have a single course of action dictated by necessity.

In *Perez* v. *Superior Court, supra,* 250 Cal.App.2d 695, 699-700, the

defendant and his companion parked in a dark vacant lot, deserted the defendant's automobile and fled over a fence when police officers shone a light upon them. The court concluded that the flight of the defendant and his companion under such "highly suspicious circumstances . . . created by the obvious act of a defendant" justified an entry into the deserted automobile for investigative purposes. Once more, we have a lack of any other reasonable alternative course of action available to the police and the necessity to proceed as they did. Moreover, it should be noted that the suspicious circumstances in *Perez* were created by the defendant therein and not by third parties, as in the instant case.

In both *People* v. *Marchese, supra,* 275 Cal.App.2d 1007, and *People* v. *Cook, supra,* 275 Cal.App.2d 970, the police officers were engaged in making an inventory of the contents of a vehicle in the process of impounding a car. ■ Evidence found in an "inventory" preparatory to a "proper impound" is not the result of a "search." (*People* v. *Ortiz,* 147 Cal.App.2d 248 [305 P.2d 145]; *People* v. *Norris,* 262 Cal.App.2d Supp. 897, 898-900 [68 Cal.Rptr. 582].) Compare, however, *Virgil* v. *Superior Court,* 268 Cal.App.2d 127 [73 Cal.Rptr. 293] where it was held that defendant's arrest for reckless driving entitled the officers to take the defendant before a magistrate and to remove the defendant's vehicle from the highway, but it did not entitle them to search the vehicle. The court indicated that the officers would have been entitled to inventory the contents of the automobile pursuant to an authorized impounding, but that no impounding was necessary since "No reason appears why [defendant's] friends could not have taken charge of the vehicle." (*Virgil* v. *Superior Court, supra,* 268 Cal.App.2d 127, 132.)

In determining whether an "emergency" exists, guidance is given by the rule stated in *People* v. *Roberts,* 47 Cal.2d 374, 377 [303 P.2d 721]: "*Necessity* often justifies an action which would otherwise constitute a trespass, as where the act is prompted by the motive of preserving life or property and reasonably appears to the actor to be necessary for that purpose." (Italics added.) Illustrative of this principle are *People* v. *Gonzales,* 182 Cal.App.2d 276 [5 Cal.Rptr. 920], where the necessity for entry was provided by an injured man, and *Romero* v. *Superior Court,* 266 Cal.App.2d 714 [72 Cal.Rptr. 430], where entry was required to find and remove explosives.

■ In this case, as the trial judge observed, the police had available

other reasonable alternatives to accomplish their laudable goals. There was no necessity to enter the locked car and search the closed glove compartment when the police could have promptly obtained the registration information they desired by other means. Furthermore, even if a police radio was not readily available, we are not convinced that the police officers' announced need for the registration data presents "extreme" or "exceptional" circumstances justifying governmental intrusion in an area where the defendant has a reasonable expectation of privacy. The police could have transmitted the report form to the car owner by dropping it through the open wind wing or by putting it under the windshield wiper as they would a parking citation. "We think this is a realistic balancing of the requirements of effective law enforcement and the necessity to protect the privacy of the citizens from unwarranted governmental intrusion." (*Skelton* v. *Superior Court,* 1 Cal.3d 144 [81 Cal.Rptr. 613, 460 P.2d 485].)

The alternative writ of mandate is discharged and the petition for peremptory writ of mandate is denied.

Ford, P. J., and Schweitzer, J., concurred.