[Crim. No. 11560.   Second Dist., Div. Three.   July 21, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. BERNARD VERNON DRAKE, JR., Defendant and Appellant.

Everett E. Ricks, Jr., for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Harold J. Smotkin, Deputy Attorney General, for Plaintiff and Respondent.

FRAMPTON, J. pro tem.*—The defendant appeals from an

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

order granting probation following his conviction upon the charge of possession of marijuana in violation of section 11530 of the Health and Safety Code.

The defendant was charged by information filed on March 12, 1965, with the crime of possession of marijuana in violation of section 11530 of the Health and Safety Code. His motion to set aside the information under the provisions of section 995 of the Penal Code was heard and denied on March 23, 1965, and he thereupon entered his plea of not guilty.

The cause was tried before the court sitting without a jury, a jury trial having been duly waived, and the defendant on July 9, 1965, was found guilty as charged. A probation report was ordered, and the hearing thereon and the matter of the pronouncement of judgment and sentence was continued to August 9, 1965. On the latter date, after hearing on the application for probation, the court suspended further proceedings and placed the defendant on probation for the period of two years on the condition, amongst others, that he pay a fine in the sum of $300 plus penalty assessment through the probation officer in such amounts and in such manner as the probation officer shall prescribe. The appeal is from the order granting probation. (Pen. Code, § 1237, subd. 1.)

It is urged that the order should be reversed on the following four grounds: ''I. The search of appellant's automobile was a violation of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

''II. The manner in which the search was conducted was unreasonable.

''III. There was no probable cause to believe that the automobile had been stolen.

''IV. Any confession or admissions the appellant might have made were the product of the illegal search.''

■ The facts are in substance as follows: Donald Edward Cornwell and Robert Morris Bell were police officers for the City of Long Beach, and were on patrol in a police vehicle on the morning of February 17, 1965. Between 6 a.m. and 7 a.m., while cruising in the police vehicle, they observed a car parked on the service road to the east side of Clark Avenue and opposite a residence at number 2470 Clark Avenue, later ascertained to be the Douglas residence.

The parked vehicle was described as a 1960 Pontiac, 2-door, silver-blue in color. The vehicle was parked parallel with and from three to four feet distant from the curb in violation of

section 22502 of the Vehicle Code. No other vehicles were parked in this area and no person was seen in or near the Pontiac. The doors of the Pontiac were unlocked and the left door was open approximately one and one-half inches. It was caught on the first latch only.

Officer Cornwell noticed that the rear gate to the house across the street from where the Pontiac was parked was standing open. He looked through the window on the driver's side of the Pontiac for the certificate of registration and observed a yellow slip but could not read anything upon it because of the manner in which it was displayed on the steering column of the vehicle. The position in which the certificate of registration of the vehicle was fastened was in violation of section 4454 of the Vehicle Code.

Officer Cornwell, in order to ascertain the name and address of the registered owner of the Pontiac, opened the door which was ajar on the driver's side of the vehicle and removed the certificate of registration from the steering column. Upon examination of the certificate he found the vehicle to be registered to a B. V. Drake, Sr., whose address was shown as 20003 Roxanne Street, a location some two miles distant from the point where the Pontiac was found parked. A parking citation was written out and placed under the windshield wiper of the vehicle.

Officer Cornwell testified that an examination of the "hot sheet" carried in the police vehicle did not disclose that the Pontiac had been reported stolen. The evidence disclosed, however, that motor vehicles have been recovered before they have been reported stolen.

Officer Cornwell testified further, that after discussing the situation with his partner, Officer Bell, he started to check the ignition of the Pontiac to see whether or not it had been "hot-wired." "I thought possibly it was stolen." Taking all of the factors into consideration "I went to check the ignition to see if it had been hot-wired, a foil placed in there."

"Q. Was there a key in the ignition?

"A. No, ma'm.

"Q. Did you check the wires under the ignition?

"A. I never got that far.

"Q. What happened?

"A. I felt a sack with a soft substance inside.

"Q. What type of sack did you feel?

"A. When I pulled it out, it was a wax paper bag, sandwich bag.

"Q. And did you observe anything inside the bag?

"A. Yes, ma'm.

"Q. What did you observe?

"A. It was a green grassy substance.

"Q. Did it resemble anything you had ever seen before?

"A. It resembled what I had observed in the form of marijuana."

The substance which Officer Cornwell found, in his attempt to check the ignition of the Pontiac, was later proved to be marijuana. At this juncture a call was placed over the police radio and in response to this call Sergeant Robert B. Hill arrived at the scene. While the three officers were standing conversing in the vicinity of the Pontiac, a man stepped out of the house across the street (later identified as Mr. Douglas) and asked if they were looking for the owner of "that car," and Sergeant Hill responded that "We were." Mr. Douglas then stated, "I believe he is asleep on my couch," whereupon he invited the officers into the house.

Upon entering the house the officers observed the defendant asleep on a couch in the living room. The daughter of Mr. Douglas awakened the defendant. At this time Sergeant Hill asked defendant if he was Bernard Drake and the defendant stated that he was. Sergeant Hill then asked the defendant if he was the owner of the Pontiac which was parked out in front and the defendant responded that he was. Sergeant Hill then asked the defendant whether he had parked the vehicle there last night and the defendant responded that he had.

Sergeant Hill testified that at this juncture he told the defendant that he had a right to remain silent, also the right to have an attorney present and that any statement which he made could be used against him. That after giving the defendant this advice he was placed under arrest. Further conversation then took place in the living room of the Douglas residence between Sergeant Hill and the defendant wherein the latter stated in substance that the marijuana found in the Pontiac was his; that he had purchased it in Wilmington the night before for the sum of $10. The defendant then produced a pack of Zig-Zag cigarette papers from his wallet and handed it to Sergeant Hill.

The trial court found that the investigatory stage had concluded after the officers asked the defendant his name, whether the Pontiac was his and whether he had parked it on the night before in the street where it was found. There was some conflict in the evidence as to whether Sergeant Hill first asked

defendant if the marijuana was his before or after he was advised of his constitutional rights and the trial court resolved this conflict in favor of the defendant and struck his admission of ownership of the contraband from the record. There was no such conflict as to the remainder of his statements and they were not stricken from the record.

The testimony portrays two police officers on routine patrol when they come upon a motor vehicle parked under circumstances which caused them to reasonably suspect that the vehicle might have been stolen and hurriedly abandoned on a public highway. In this situation it was not only proper but it was the duty of the officers to make an investigation of the vehicle in order to ascertain whether or not it had been stolen and if found to be stolen to take proper steps to remove it from the highway and cause its return to the person entitled to its possession. ██ To examine the wiring of the ignition to see if it had been "hot-wired" was a proper step to ascertain whether the vehicle had been stolen in view of the other circumstances under which the vehicle was found. ██ In doing so the officers were not engaged in the search for contraband nor were they attempting to make an arrest, and they were not obligated under the law to ignore the contraband which came to their attention accidentally while they were engaged in a lawful investigation of the vehicle in which it was found. (See *People* v. *Roberts,* 47 Cal.2d 374 at p. 379 [303 P.2d 721]; *People* v. *Ortiz,* 147 Cal.App.2d 248 at p. 251 [305 P.2d 145]; *People* v. *Simpson,* 170 Cal.App.2d 524 at p. 530 [339 P.2d 156].)

The record further shows that any statements that the defendant made tending to connect him with the contraband, and which were allowed to remain in evidence, were obtained by the police officers after they had fully advised the defendant of his right to remain silent, of his right to have the advice of counsel, and after the defendant was told that any statement that he made would be used against him.

We find no merit in any of the points raised by the defendant.

The judgment (order granting probation) is affirmed.

Ford, J., and Kaus, J., concurred.