[Crim. No. 16597. In Bank. July 26, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
JOHN CHARLES GALE, Defendant and Respondent.

## COUNSEL

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, Oretta D. Sears and John J. Ryan, Deputy District Attorneys, for Plaintiff and Appellant.

Keith C. Monroe and George H. Chula for Defendant and Respondent.

## OPINION

**BURKE, J.**—Defendant was charged with possession of marijuana for sale (former Health & Saf. Code, § 11530.5) and possession of cocaine (former Health & Saf. Code, § 11500).[1] He moved for suppression of the evidence on the ground of illegal search and seizure. (Pen. Code, § 1538.5.) The trial court ordered the evidence suppressed, and on its own motion dismissed the indictment (Pen. Code, § 1385). The People appeal. (Pen. Code, § 1238, subd. (a), subsecs. (1) and (7).)[2]

Between 8 and 9 p.m. on March 11, 1971, Police Officer Aumond noticed a man, subsequently identified as defendant, in a dimly lighted parking lot adjacent to a group of businesses, some of which were known by the officer to have been burglarized in recent months. After Officer Aumond drove partially around the block and into the lot defendant, who had been standing near the right side of a Pontiac, walked to his left past the front of the vehicle, moved towards the police unit, but then veered away and headed in the direction of the street. The officer called to defendant, approached him, and requested identification. Defendant produced his driver's license, which appeared to be in order, and said he was waiting for a friend. In response to additional questions, defendant stated that he did not own the Pontiac and that "he thought the car belonged to the person he was waiting for but upon checking he found it wasn't." Defendant also stated that other friends were waiting for him at a cafe located approximately one block from the parking lot. At some time during this conversation Officer Aumond patted defendant down, but found no weapons. (The legality of the pat-down search is not at issue.)

A second police officer, James Gardiner, arrived to assist. Officer Gardiner took over the field interrogation of defendant, while Officer Aumond went to the Pontiac to determine if it had been burglarized.

---

[1]The cited sections of the Health and Safety Code, together with all sections of former division 10 of that code, were repealed and reenacted with different numbering by chapter 1407 of the Statutes of 1972.

[2]This was actually the second time the evidence had been suppressed and the charges dismissed. Defendant was originally charged in a complaint filed on March 25, 1971. At the preliminary hearing he made a motion under section 1538.5, subdivision (f), for suppression of the evidence, and on July 30, 1971, the motion was granted and the charges dismissed. On August 18, 1971, however, the prosecution presented the same evidence to a grand jury (Pen. Code, § 1538.5, subd. (j)), which returned an indictment. On January 12, 1972, a second motion was successfully made by defendant for suppression of the evidence. It is the order granting that motion which the People now challenge on appeal.

Officer Aumond testified he first approached the driver's side of the vehicle, a two-door hardtop, and examined the windows and interior with his flashlight. During this initial scrutiny he noticed "dust disturbances" which looked to him like handprints on the driver's door and rear side window. Observing that the front window on the passenger side was lowered and that unprotected items of personal property were visible on the front and back seats, Officer Aumond assertedly entered the vehicle on the passenger side to ascertain if it had been burglarized or tampered with, to look for registration papers, and to secure the items of property inside. Once inside the vehicle Aumond smelled the strong odor of bulk marijuana.

Officer Aumond then left the Pontiac and went to a Porsche automobile parked approximately 10 feet away, on the other side of a delivery van. He shone his flashlight on the car and noticed "dust disturbances" on the driver's door similar to those he had seen on the Pontiac. He then opened the door and entered the Porsche. He found no evidence of tampering, but removed the car's registration papers. While inside, he again smelled an odor of marijuana.

Officer Aumond returned to Officer Gardiner, and the latter said that defendant's clothing also smelled strongly of marijuana After personally verifying this fact, Officer Aumond placed defendant under arrest on suspicion of possession of marijuana. A search of defendant's person disclosed $1,400 in cash in his shirt pocket, but no marijuana or other contraband. The two cars, however, were then thoroughly searched and substantial quantities of marijuana were found in both, together with a small amount of cocaine in the Porsche.

In granting defendant's motion to suppress the foregoing evidence, the trial court ruled there were no circumstances giving a reasonable person cause to believe the cars had been tampered with. The officer "has to have some cause to get in the car," said the court, and none was shown here.

We turn to a consideration of the order appealed from under appropriate standards of review. Recently we stated "In such a proceeding [a Pen. Code, § 1538.5 motion to suppress evidence] the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence. The trial court also has the duty to decide whether, on the facts found, the search was un-

reasonable within the meaning of the Constitution. Although that issue is a question of law, the trial court's conclusion on the point should not lightly be challenged by appeal or by petition for extraordinary writ. [Fn. omitted.] Of course, *if such review is nevertheless sought, it becomes the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness.*" (Italics added; *People* v. *Lawler,* 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].) In assuming the responsibility announced above, we have concluded, as a matter of law, that the facts and circumstances found by the trial court warranted the officer's initial entry into the Pontiac, but not the subsequent entry into the Porsche.

However, at the outset of our analysis it may be useful to explain what is *not* involved in this proceeding. First, we need not determine whether the prosecution made a sufficient showing at the hearing to connect this defendant with the contents of the Pontiac and the Porsche—i.e., to establish that defendant had dominion and control over the contraband found therein. Whether there were reasonable grounds to suspect this defendant—rather than someone else—to be guilty of possessing the contraband found in the two cars is not an issue cognizable on a motion under Penal Code section 1538.5. It is a matter to be litigated at the trial, or, if pretrial relief is desired, by a motion under section 995 to set aside the indictment or information for lack of probable cause.[3] By contrast, a motion under section 1538.5 is directed not to the identity of the culprit but to the legality of specific items of evidence obtained by a search and seizure. It is, in a sense, in the nature of a proceeding in rem against the evidence itself. The only connection that need be shown between the evidence and the moving party, accordingly, is a sufficient interest to give the latter *standing* to make the motion. In the case at bar standing is provided by the rule in this state that a defendant against whom incriminating evidence is offered in a criminal prosecution, as here, has standing to seek its suppression on the ground of illegal search and seizure. (*Kaplan* v. *Superior Court,* 6 Cal.3d 150, 156-157 [98 Cal.Rptr. 649, 491 P.2d 1], and cases cited.)

Second, for present purposes the lawfulness of defendant's arrest is also irrelevant. We may assume arguendo that the arrest was legal.[4] But it

[3]In the case at bar a motion under section 995 was in fact made and denied prior to the hearing on the present motion to suppress.

[4]Penal Code section 836, subdivision 3, authorizes an arrest without a warrant whenever an officer "has reasonable cause to believe that the person to be arrested has committed a felony, . . ." In determining whether such cause exists "an officer may rely upon all of his senses," including the sense of smell. (*People* v. *Marshall,*

does not follow that the search of the Pontiac and the Porsche can be upheld as an incident to that arrest. It may be fairly inferred from the record that at the time defendant was placed under arrest he was immediately adjacent to the patrol car.[5] The patrol car, however, was parked 25 or 30 feet from the place where the Pontiac and the Porsche were standing. At that distance the interior of the latter cars was manifestly not an "area into which an arrestee might reach in order to grab a weapon or evidentiary items" (*Chimel* v. *California,* 395 U.S. 752, 763 [23 L.Ed. 2d 685, 694, 89 S.Ct. 2034]), and hence could not lawfully have been searched as an incident to the arrest.

On the other hand, even if the arrest had been invalid the search of the Pontiac and the Porsche would be permissible if Officer Aumond's *initial* entry into each vehicle was lawful. This is so because in each instance the strong odor of fresh marijuana which Officer Aumond smelled after entering would have given him "probable cause to believe . . . that contraband may be present." (*People* v. *Marshall, supra,* 69 Cal.2d 51, 57, fn. 2.) Inasmuch as the contraband was apparently located not in a dwelling but in an automobile parked in a public lot—unlocked, accessible, and readily movable—the same probable cause would have justified the subsequent search of each vehicle under the rationale of *Carroll* v. *United States,* 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280, 39 A.L.R. 790], and its progeny.

It follows that the dispositive question in this proceeding is whether Officer Aumond's initial entry into the Pontiac and the Porsche was lawful. His observation while outside each vehicle—whether of the exterior or the portion of the interior visible from that vantage point—was not a "search" in the constitutional sense. (*Harris* v. *United States,* 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992].) But his ensuing entry into each car was, under numerous cases, a search within the meaning

69 Cal.2d 51, 57, fn. 2 [69 Cal.Rptr. 585, 442 P.2d 665].) Here both officers testified they detected a strong odor of fresh marijuana apparently emanating from defendant's person. The observation thus gave them reasonable cause to believe defendant guilty of the offense of possessing marijuana, and hence to arrest him on that charge. (*Mann* v. *Superior Court,* 3 Cal.3d 1, 7 [88 Cal.Rptr. 380, 472 P.2d 468].) It is of course irrelevant in this connection that no marijuana was actually found on defendant in the post-arrest search of his person, as the code authorizes such an arrest "whether or not a felony has in fact been committed."

[5] After returning from his first entry into the Pontiac and the Porsche, Officer Aumond placed defendant in the rear seat of his patrol car while he told Officer Gardiner of the marijuana odor he had detected in those vehicles. Upon learning from Officer Gardiner that defendant also smelled of marijuana, Officer Aumond removed him from the patrol car, verified the presence of the odor, and arrested him forthwith.

of the Fourth Amendment to the United States Constitution and article I, section 19, of the California Constitution. (See, e.g., *People* v. *Superior Court (Kiefer)* 3 Cal.3d 807, 830-831 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].) ■ As it was stipulated that Officer Aumond did not have a warrant to search either car, the burden to show proper justification for these searches rested on the prosecution. (*Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2d 23].) We begin with the entry into the Pontiac.

On the basis of the aforementioned facts[6] the trial court held Officer Aumond's entry into the Pontiac was unwarranted and suppressed the subsequently discovered contraband. However, we have concluded that an examination of the totality of the circumstances, from the officer's initial observance of defendant in the area to the exterior inspection of the Pontiac, commands the contrary result. Since Officer Aumond's external inspection of the Pontiac produced no observable evidence of "tampering" other than the dust disturbances, the trial court concluded that there were no circumstances sufficient to give a reasonable person cause to believe the vehicle had been tampered with or burglarized, and thus, there was no reason to enter the vehicle. We disagree. ■ It appears that the trial court failed to consider the reasonable inference, drawn from the suspicious circumstances preceding Aumond's entry into the vehicle,[7] that a crime was being, or had been, perpetrated in or about the Pontiac.

In retrospect, we might agree that Officer Aumond could have pursued alternate courses of conduct in attempting to inspect the vehicle, such as attempting to locate the owner by a radio license check. However, knowledge acquired through hindsight is an improper gauge by which to judge an officer's actions. ■ "The question of the reasonableness of the officers' conduct is determined on the basis of the information possessed by the officer *at the time a decision to act is made.* [Citations.]" (*People* v. *Superior Court (English)* 266 Cal.App.2d 685, 688 [72 Cal.Rptr. 261]; italics added.) ■ Thus; in light of the knowledge available at the time the entry into the Pontiac was made, Officer Aumond's actions appear lawful and reasonable. Significantly, we note that "[e]xperienced police officers naturally develop an ability to perceive the unusual and

---

[6]See pages 791-792, *ante.*

[7]Among the facts which, in combination, would justify entry into the vehicle are (1) defendant's presence in the parking lot at night, (2) nearby business establishments, some which had been recently burglarized, (3) defendant's elaborate explanation for his presence, (4) the dust disturbances on the door and window, (5) the unsecured condition of the vehicle, and (6) the visible personal property on the front and rear seats of the vehicle.

suspicious which is of enormous value in the difficult tasks of protecting the security and safety of law-abiding citizens. The benefit thereof should not be lost because the cold record before a reviewing court does not contain all the particularized perceptions which may have been so meaningful at the scene." (*People* v. *Cowman,* 223 Cal.App.2d 109, 117-118 [35 Cal. Rptr. 528].)

The Supreme Court of the United States in *Terry* v. *Ohio,* 392 U.S. 1, 21-22 [20 L.Ed.2d 889, 905-906, 88 S.Ct. 1868], said "The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. [Fn. omitted.] And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? [Citation, fn. omitted.] Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. [Citation.]" As previously stated, we have concluded as a matter of law that Officer Aumond's entry into the Pontiac, based on the articulable facts available to him, was entirely reasonable and appropriate. The California cases support that conclusion.

For example, in *People* v. *Drake,* 243 Cal.App.2d 560 [52 Cal.Rptr. 589], two police officers on patrol at 6:30 a.m. noticed a vehicle parked approximately three feet from the curb; both doors were unlocked and one was slightly ajar. One officer entered to find the registration which showed the owner lived two miles from the scene. Suspecting that the vehicle might have been stolen, the officer then examined the ignition to determine whether it had been "hot wired." In affirming the legality of the discovery of marijuana under the ignition upon entry into the vehicle the court stated (p. 564), "To examine the wiring of the ignition to see if it had been 'hot wired' was a proper step to ascertain whether the vehicle had been stolen in view of the other circumstances under which the vehicle was found. In doing so the officers were not engaged in the search for contraband nor were they attempting to make an arrest, and they were not obligated under the law to ignore the contraband which came to their attention accidentally while they were engaged in a lawful investigation of the vehicle in which it was found. [Citations.]"

The *Drake* case is virtually indistinguishable from the instant case and its rationale would permit officers to enter an unoccupied vehicle when-

ever the circumstances surrounding the entry reasonably indicate the possibility of burglary or tampering. Considering both the relatively minor nature of the intrusion in this case and the circumstances surrounding Officer Aumond's decision to enter the vehicle, we uphold the entry into the Pontiac as a reasonable, on-the-scene investigation.

However, the search of the Porsche presents a different factual situation. The factors which we deemed significant in giving rise to reasonable cause to enter the Pontiac fail to support the entry into the Porsche. Defendant was not observed near or about the Porsche, that vehicle did not appear unsecured, and there was no visible personal property on the seats open to theft. ■ Thus, in the absence of any suspicious circumstances or other factors connecting defendant with the Porsche, we view Officer Aumond's entry into the Porsche as unreasonable and hold that the evidence of the contraband discovered in the Porsche should be suppressed.

■ Defendant also maintains that his detention by the officers should have ceased once he furnished satisfactory identification and responded in a reasonable manner to the officers' questions.[8] An analysis of the factual setting in which the detention occurred,[9] coupled with applicable legal principles leads us to conclude, however, that the detention was not unduly extensive.

Officer Aumond testified that approximately three minutes elapsed from the time he initially stopped defendant to the arrival of Officer Gardiner. After conversing with the second officer, Aumond proceeded to examine the vehicles while Gardiner continued to fill out a field interrogation card with defendant. Although the record fails to disclose the length of time it took Aumond to inspect the vehicles, inform Gardiner of the marijuana odor in the vehicles, be told of the smell of marijuana on defendant's clothes, and make the arrest, the actual duration of the detention appears to have been minimal.[10] Defendant does not contend otherwise. Thus, on the basis of the foregoing sequence of events, it appears that either officer would have been remiss in permitting defendant to leave prior to informing the other of the particular knowledge acquired by each independently.

Defendant does not challenge the legality of his initial detention. It has been stated that "While a detention of a citizen by a police officer based on

---

[8]The trial court, in granting suppression, stated "Well, number one, after interrogating the defendant, getting his ID and his reasonable explanation for where he was and why, they should have sent him on his way."

[9]See pages 791-792, *ante;* footnote 5.

[10]The record also fails to disclose whether Officer Gardiner had completed the field interrogation card before Officer Aumond returned.

a 'mere hunch' is unlawful, if there is a rational *suspicion* that some activity out of the ordinary is taking place, and some *suggestion* that the activity is related to crime, a detention is permissible. [Citation.]" (*People* v. *Gravatt,* 22 Cal.App.3d 133, 136-137 [99 Cal.Rptr. 287]; italics in original.)[11] Many of the factors which we have deemed significant in sustaining the reasonableness of Officer Aumond's entry into the Pontiac also serve to sustain defendant's detention.[12]

*People* v. *Rosenfeld,* 16 Cal.App.3d 619 [94 Cal.Rptr. 380], aids us in determining that defendant's detention was not unreasonable in extent. In that case two officers were patrolling an alley behind apartments with open garages in an area where there had been a number of auto burglaries. The officers spotted defendant and asked his reason for being there. Defendant responded that he was looking for a friend, but that he did not know where the friend resided. One officer continued the interrogation of defendant while the other sought to find the friend as well as to check nearby buildings and vehicles. In discussing the legality of the detention the court stated "it is apparent that what the officers were attempting to do was carry out an on-the-scene investigation in a high crime rate area of the activities of a person who they suspected might be breaking into parked vehicles. It is a reasonable inference that the officers were attempting to *prevent* the commission of a crime by a timely investigation of [a] brief duration. [Citation.]" (P. 623; italics in original.) The court additionally remarked (p. 623), "The duration of the further investigation was admittedly short, and the extent of the additional temporary detention was minimal. On the facts before us we believe the officers acted within their authority. Unlike *People* v. *Lingo,* 3 Cal.App.3d 661 . . . and *Pendergraft* v. *Superior Court,* 15 Cal.App.3d 237 . . . where a lawfully initiated detention was unlawfully extended, *the officers at bench had not completed their initial on-the-scene investigation.* Prudence dictated that at a minimum the police examine the nearby vehicles and buildings for signs of unlawful entry or attempted unlawful entry." (Italics added.)

---

[11]See also *Irwin* v. *Superior Court,* 1 Cal.3d 423, 426 [82 Cal.Rptr. 484, 462 P.2d 12], "In *People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 94-96 . . . , we held that, although 'a police officer . . . may detain and question a person when the circumstances are such as would indicate to a reasonable man in a like position that such a course is necessary to the proper discharge of [his] duties,' the circumstances must be such as to distinguish the activity of the detained person from that of any other citizen and must be based on an objective perception of events rather than the subjective feelings of the detaining officers. [Citation.]"

[12]The pertinent factors are: (1) Defendant's presence in the parking lot at night, (2) nearby business establishments, some of which had been recently burglarized, (3) defendant's explanation for his presence, (4) and his close proximity to the Pontiac when Officer Aumond entered the parking lot.

In the instant proceeding it appears that Officer Aumond's examination of the vehicles was merely the logical consequence of his initial detention of defendant. By the time Officers Aumond and Gardiner completed the on-the-scene investigation, they possessed sufficient knowledge to warrant defendant's arrest. In view of the circumstances giving rise to defendant's detention, and the reasonableness of the subsequent inspection and entry into the vehicles, the extended detention was a necessary concomitant of a thorough investigation.

Finally, defendant contends that submission of previously suppressed evidence to a grand jury for consideration amounts to a denial of due process unless the grand jury is informed of the prior judicial action. However, without passing on the merits of this contention, it is evident that the question was not properly before the trial court under Penal Code section 1538.5, which (as pointed out above) is limited by its terms to a consideration of the admissibility of evidence allegedly obtained through an illegal search and seizure. (See *People* v. *Superior Court* (*Redd*) 275 Cal.App.2d 49, 50-52 [79 Cal.Rptr. 704]; cf. *People* v. *Superior Court* (*Smith*) 70 Cal.2d 123, 127-130 [74 Cal.Rptr. 294, 449 P.2d 230].) Accordingly, we do not reach the matter on this appeal from the granting of defendant's motion under that section.

The portion of the order of the trial court suppressing the evidence found in the Pontiac and dismissing the indictment is reversed. The remainder of the order suppressing the evidence discovered in the Porsche is affirmed.

Wright, C. J., McComb, J., and Wood, J.,* concurred.

**MOSK, J.**—I dissent.

The trial court, having heard the witnesses and their explanation of the facts, suppressed the evidence obtained from both vehicles. The majority, drawing a strange distinction, uphold the trial court's ruling as to the Porsche but reverse as to the Pontiac, located under the same circumstances at the same site at the same time. I would uphold the trial court.

Officer Aumond's unlawful entry into the Pontiac cannot be legitimized by invoking the "totality of the circumstances" rule. Each and every one of the six facts which the majority hold would justify the entry when taken "in combination" (*ante*, p. 795, fn. 7) is equally consistent with innocence. As we recently reiterated, "Officers cannot reasonably conclude on the basis

---

*Assigned by the Chairman of the Judicial Council.

of behavior that is entirely consistent with innocent activity that an offense has been committed." (*People* v. *Miller* (1972) 7 Cal.3d 219, 225 [101 Cal.Rptr. 860, 496 P.2d 1228].)

The majority first point to "defendant's presence in the parking lot at night." But the lot was open to the public, and a number of other cars were parked there at the time of the events in question. The hour, moreover, was not the dead of night, but 8 or 9 o'clock on a spring evening. By contrast, in *People* v. *Miller* (1972) *supra*, 7 Cal.3d 219, the police observed the defendant asleep in a car parked in an abandoned private lot at 3 a.m. Yet we held that this fact could not contribute to a finding of probable cause: "Certainly, the mere fact that defendant was found sleeping in such a location did not evidence any criminal behavior on his part; . . ." (*Id.* at p. 225.)

By making a point of describing in their statement of facts (*ante*, p. 791) the particular path followed by defendant on leaving the parking lot, the majority seem to imply that his movements may have furnished an additional ground for suspicion. But we have previously rejected just such an argument. In *People* v. *Simon* (1955) 45 Cal.2d 645 [290 P.2d 531], a police officer observed two youths at 10:40 p.m. in a warehouse district, walking first in one direction and then back again; he stopped and searched them, finding narcotics. Holding the search unlawful, we reasoned (at p. 650): "the mere fact that two persons walked a few blocks in a warehouse district at night and then retraced their steps would not constitute reasonable cause to believe either had committed a felony, even if the officer had entertained such a belief." We reaffirmed *Simon* in *People* v. *Superior Court (Kiefer)* (1970) 3 Cal.3d 807, 825 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]: the fact that a defendant's movements occur in the nighttime, we explained, must be "appraised with caution; it does not, without more, transform an innocent gesture into a culpable one furnishing probable cause to search. As long ago as *People* v. *Simon* (1955) 45 Cal.2d 645, 650-651 [290 P.2d 531], we acknowledged, 'There is, of course, nothing unreasonable in an officer's *questioning* persons outdoors at night' (italics added). Recognizing, however, that in our society it is not a crime for a citizen to be out after dark, we held that 'to permit an officer to justify a search on the ground that he "didn't feel" that a person on the street at night had any lawful business there would expose anyone to having his person searched by any suspicious officer no matter how unfounded the suspicions were. Innocent people, going to or from evening jobs or entertainment, or walking for exercise or enjoyment, would suffer along with the occasional criminal who would be turned up.' These dangers are no less real today."

The majority next refer to "nearby business establishments, some of which had recently been burglarized." But our decisions have by now made it crystal clear that if the observed activity of a defendant is equally consistent with innocence, as here, the fact that it takes place in an area known by the officer to be the scene of frequent recent crimes of the type suspected does not furnish any element of probable cause. Thus in *People* v. *Moore* (1968) 69 Cal.2d 674 [72 Cal.Rptr. 800, 446 P.2d 800], the defendant was detained as a suspected narcotics user in an area in which the officer had previously made several narcotics arrests. Holding the detention unlawful, we said (at p. 683): "[T]he only suspicious circumstances relied upon by the officer were that the area was one where narcotic transactions had taken place in the past and that defendant upon seeing the officers' car turned his back on them, moved from a comfortable position, and appeared nervous. Defendant was talking on a telephone in a booth at ten in the morning, and there seems little to distinguish defendant from any other citizen who may have been making a telephone call at that time and place. To hold that police officers should in the proper discharge of their duties detain and question all persons in that location or all those who act nervous at the approach of officers would for practical purposes involve an abrogation of the rule requiring substantial circumstances to justify the detention and questioning of persons on the street."

The same rule was applied in *Cunha* v. *Superior Court* (1970) 2 Cal.3d 352 [85 Cal.Rptr. 160, 466 P.2d 704]. There, two officers stationed themselves in an area in which one had made 15 to 20 narcotics arrests in 3 months and the other had made 30 to 40 such arrests in 6 months. They observed the defendant and a companion walk along the street while looking watchfully about them, then apparently exchange an object for money. Inferring that a sale of narcotics had just been consummated, the officers arrested and searched the two men, finding narcotics. Ordering the evidence suppressed, we held (at p. 357) that "Neither petitioner's activities nor the location of his arrest provided probable cause for arrest." Quoting the above language from *Moore,* we concluded: "*Moore* held that a high crime rate area cannot convert circumstances as innocent as a telephone call by an individual who acted nervous at the approach of a police officer into sufficient cause to detain that individual. Similarly, an area known to be the site of frequent narcotics traffic should not be deemed to convert circumstances as innocent as an apparent transaction by pedestrians who seem generally concerned with their surroundings into

sufficient cause to arrest those pedestrians."[1] (Accord, *Remers* v. *Superior Court* (1970) 2 Cal.3d 659, 665-666 [87 Cal.Rptr. 202, 470 P.2d 11]; *People* v. *Conley* (1971) 21 Cal.App.3d 894 [98 Cal.Rptr. 869].)

The third assertedly suspicious circumstance emphasized by the majority is "defendant's elaborate explanation for his presence." I find nothing "elaborate" about that explanation, fairly summarized in the majority opinion.[2] In any event, "elaborateness" is not the test here: we have held that when a defendant gives "an inherently implausible explanation for his presence," it may reasonably constitute an additional ground for suspicion. (*People* v. *Sandoval* (1966) 65 Cal.2d 303, 310 [54 Cal.Rptr. 123, 419 P.2d 187].) There is, of course, nothing inherently implausible in defendant's explanation in the case at bar.

More importantly, the majority's reliance on defendant's own words to justify Officer Aumond's conduct is fraught with dangers which we have only recently elucidated. To begin with, in such circumstances the person confronted by the police is not required to say anything at all, and his refusal to do so may not be held against him. Thus, in *Gallik* v. *Superior Court* (1971) 5 Cal.3d 855 [97 Cal.Rptr. 693, 489 P.2d 573], the investigating officer observed what he believed was a furtive movement by the defendant and asked for an explanation. We held that the defendant's negative response was wholly insufficient to invest the movement with guilty significance: " 'Upon such inquiry the person questioned may elect to give an explanation of his "furtive" movement or he may freely consent to a search. [Citation.] He may, on the other hand, elect to stand on his constitutional right not to cooperate with the officers in securing evidence against him.' " In that event, we declared, probable cause " 'must be predicated on specific facts and circumstances, other than a mere negative reply to the subject inquiry, . . .' "

If on the other hand the defendant does give an explanation, we have warned that it must not be turned against him on an easy assumption that it is false. In *People* v. *Superior Court (Simon)* (1972) 7 Cal.3d 186 [101 Cal.Rptr. 837, 496 P.2d 1205], we first held that a driver's failure

---

[1]In a footnote at this point (p. 357, fn. 1) we warned that "giving substantial weight to the perceived crime rate of an area may constitute a self-fulfilling prophecy."

[2]"The officer called to defendant, approached him, and requested identification. Defendant produced his driver's license, which appeared to be in order, and said he was waiting for a friend. In response to additional questions, defendant stated that he did not own the Pontiac and that 'he thought the car belonged to the person he was waiting for but upon checking he found it wasn't.' Defendant also stated that other friends were waiting for him at a cafe located approximately one block from the parking lot." (*Ante*, p. 791.)

to produce his vehicle's registration card, without more, cannot reasonably give rise to a belief the vehicle is stolen. (*Id.* at pp. 193-194.) We then acknowledged that such probable cause may appear if the lack of a registration card is followed by an explanation thereof which is "inconsistent, conflicting, or palpably false" (*id.* at p. 197). But we hastened to reiterate our admonition in *Kiefer* that " 'the police officer should remember there is no substitute for patient and thorough investigation, and should avoid drawing a hasty or preconceived conclusion' (*People* v. *Superior Court* (1970) *supra,* 3 Cal.3d 807, 828) that the motorist's explanation of the lack of his registration card is in fact inconsistent or false." We concluded that "there may be a substantial difference between an explanation which is patently inconsistent or false and one which simply does not go into enough detail to persuade the arresting officer of its truth. An officer's subjective opinion that a given motorist 'should' be able to furnish a more detailed identification of the owner who lent him the car may well fall short of the objective probability of guilt required by the Fourth Amendment to justify an arrest or search without a warrant." (*Id.* at p. 197, fn. 10.) Here again, the explanation furnished by defendant to Officer Aumond was by no stretch of the imagination "patently inconsistent or false."

The majority next list "the dust disturbances on the door and window" of the Pontiac. Reliance on that evidence is such a novel idea that it is not surprising there are no cases either confirming or rejecting it. But we are not, I hope, left without the guidance of common sense and experience. Officer Aumond's testimony that he saw "dust disturbances" resembling handprints on the door and windows of the driver's side was offered to sustain his claim of probable cause to believe the car had been "burglarized or tampered with."[3] The trial court ruled that Officer Aumond's observation of "dust disturbances" did not contribute to the claimed probable cause because no reasonable man could believe an attempt had been made to break the lock on the *driver's* door of a car when the window of the *passenger* door, as here, was wide open. I agree. I further submit that most automobiles, except those which have been freshly washed, are likely to

---

[3]It bears emphasizing that this testimony was the only evidence offered in support of that belief. Clarifying the point, defense counsel asked Officer Aumond, "When you took the flashlight, you looked in the Pontiac, you didn't see anything in the Pontiac that appeared to have been tampered with, did you?" The officer acknowledged that the glove compartment was not open, and he could not see any dangling wires indicating that a radio or stereo set might have been taken. The inquiry concluded:

"Q. Now, and there was nothing that you could observe from the outside of the car that in any way indicated that there was anything tampered with in that Pontiac; is that correct? A. That is correct."

have similar "dust disturbances" or smudges on their doors or windows, especially around the handles. Unless we are to deny this common experience of our senses, we must acknowledge that the circumstance here relied on is fully as consistent with innocence as with guilt.

The last two circumstances stressed by the majority—"the unsecured condition of the vehicle" and "the visible personal property on the front and rear seats of the vehicle"—may conveniently be considered together. The testimony describing both was offered by Officer Aumond to support the final rationalization for his warrantless entry: i.e., that he did so to protect the personal property in the car from being stolen by larcenously inclined passersby. The contention will not bear scrutiny in the light of *Mozzetti* v. *Superior Court* (1971) 4 Cal.3d 699 [94 Cal.Rptr. 412, 484 P.2d 84]. There the defendant was injured in an automobile collision and was taken to the hospital; prior to towing her car to storage the police "inventoried" its contents, and in so doing opened a suitcase lying on the back seat, finding marijuana. The People contended inter alia that the search of the suitcase "was reasonably necessary to protect [defendant's] personal property from loss or damage" (*id.* at p. 707). We rejected that argument, stating that in determining the constitutionality of the officer's entry we must balance the owner's interest in keeping his property safe against his "countervailing interest in maintaining the privacy of his personal effects . . . ." (*Ibid.*) However commendable the officer's motive may be, the owner may well prefer that his car and its contents not be disturbed by official intrusion.

In this respect the present case is even more compelling than *Mozzetti.* There the police *knew* that the driver of the car in question would not soon return to take care of her property, as she had been injured and transported to a hospital; such a belief is also reasonable when the driver has been arrested on a criminal charge and taken to jail. Officer Aumond, by contrast, had no grounds whatever to believe that the owner of the Pontiac was either incapacitated or in police custody.[4] But in many other instances

---

[4]The belief may also be reasonable when it fairly appears the vehicle has been stolen or abandoned. (See, e.g., *People* v. *Grubb* (1965) 63 Cal.2d 614, 618 [47 Cal. Rptr. 772, 408 P.2d 100].) Such was the case in *People* v. *Drake* (1966) 243 Cal. App.2d 560 [52 Cal.Rptr. 589], which the majority deem "virtually indistinguishable" from the case at bar. A careful reading of *Drake,* however, shows its distinction. There the automobile was found by the police in a service road between 6 and 7 a.m.; it was illegally parked several feet from the curb; although no one was in the vicinity, one of the car doors was ajar; and the registration card was illegally positioned so as not to be legible from outside the vehicle. In those circumstances it was not unreasonable for the officers to suspect the vehicle might have been "stolen and hurriedly abandoned." (*Id.* at p. 564.) But no such facts were shown here: the Pontiac was

the owner may be in the vicinity, only temporarily away from his vehicle, and may feel that any slight risk of theft is outweighed by the convenience of immediate access to his car upon his return. The choice in such circumstances should be that of the owner. Certainly the mere fact that a lawfully parked automobile is unlocked and contains visible items of personal property should not give every passing police officer license to climb inside the vehicle for the purpose of "securing" that property against hypothetical thieves.

Moreover, even if we assume that the circumstances relied on by the majority justified the belief in this case that the owner would not shortly return, it was not necessary for Officer Aumond to *enter* the car in order to protect its contents. As we pointed out in *Mozzetti* (4 Cal.3d at p. 707), he could simply have rolled up the window and locked the door: "The owner himself, if required to leave his car temporarily, could do no more to protect his property."[5]

In the alternative, if the officer felt it was necessary to notify the owner of the insecure condition of the car, he could quickly have learned the latter's identity by running a radio check of the license number. Since Officer Aumond thus had less intrusive means available to him, his asserted purpose of "securing" the property in the Pontiac did not justify the entry. A case in point is *People* v. *Superior Court* (1969) 2 Cal.App. 3d 304 [82 Cal.Rptr. 766], relied on by the trial court. There, after observing activity around a parked car in an area in which previous burglaries had taken place, a police officer shone his flashlight through the car's window and saw loose wires hanging from the dashboard and empty brackets beneath. Believing a stereo set had been stolen from the vehicle, he entered it for the asserted purpose of learning the owner's name and address and leaving a notice directing the owner to report the theft to the police station. Sustaining an order suppressing evidence of marijuana found in the glove compartment as a result of that entry, the Court of Appeal reasoned (at pp. 309-310): "In this case, as the trial judge observed, the

---

lawfully parked in a public lot; its doors, although unlocked, were closed; and while no registration card was apparently visible, the statute imposing that requirement had been repealed four years before the events here in question (see *People* v. *Superior Court* (1972) *supra,* 7 Cal.3d 186, 193, fn. 5). In these circumstances it is understandable that Officer Aumond not once testified he believed the Pontiac had been stolen or abandoned.

[5]Officer Aumond testified he did not smell the marijuana until *after* he had entered the car. We may not speculate whether he might have smelled it if he had simply opened the door and rolled up the window. Our concern is whether the search was constitutional, not whether the same evidence would have been discovered if a constitutional path had been followed.

police had available other reasonable alternatives to accomplish their laudable goals. There was no necessity to enter the locked car and search the closed glove compartment when the police could have promptly obtained the registration information they desired by other means. Furthermore, even if a police radio was not readily available, we are not convinced that the police officers' announced need for the registration data presents 'extreme' or 'exceptional' circumstances justifying governmental intrusion in an area where the defendant has a reasonable expectation of privacy. The police could have transmitted the report form to the car owner by dropping it through the open wind wing or by putting it under the windshield wiper as they would a parking citation. 'We think this is a realistic balancing of the requirements of effective law enforcement and the necessity to protect the privacy of the citizens from unwarranted governmental instrusion.' (*Skelton* v. *Superior Court,* 1 Cal.3d 144 [81 Cal.Rptr. 613, 460 P.2d 485].)"

I conclude, as we did in *Cunha* (2 Cal.3d at p. 358) that "the behavior observed here was consistent with innocence and any relation to criminality did not depend upon the expertise of the observer." When each of the individual circumstances observed by the officer is thus consistent with innocence, they do not mysteriously become imbued with an aura of guilt merely by viewing them in their "totality." Six times zero, in my arithmetic, still equals zero. (See, e.g., *People* v. *One 1960 Cadillac Coupe* (1964) 62 Cal.2d 92, 96 [41 Cal.Rptr. 290, 396 P.2d 706]; *People* v. *Privett* (1961) 55 Cal.2d 698, 701-702 [12 Cal.Rptr. 874, 361 P.2d 602]; *People* v. *Schraier* (1956) 141 Cal.App.2d 600, 602-604 [297 P.2d 81]; cf. *People* v. *Mickelson* (1963) 59 Cal.2d 448, 452-454 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Gibson* (1963) 220 Cal.App.2d 15, 22-25 [33 Cal.Rptr. 775].) In *Remers* (2 Cal.3d at p. 664) we reasoned that "Where the events are as consistent with innocent activity as with criminal activity, a detention based upon those events is unlawful [citations]; a fortiori, an arrest and search based on events as consistent with innocent activity as with criminal activity are unlawful." The majority concede (*ante,* pp. 794-795) that Officer Aumond's "entry into each car was, under numerous cases, a search within the meaning of the Fourth Amendment to the United States Constitution and article I, section 19, of the California Constitution." Under the authorities discussed herein, both those searches were unlawful.[6]

---

[6]The majority's partial affirmance, sustaining the order appealed from insofar as it suppressed the evidence discovered in the Porsche, only emphasizes the weakness of their position. Most of the circumstances deemed suspicious in analyzing the search of the Pontiac were present also in the search of the Porsche: defendant was still

When the evidence discovered by means of the illegal entries is excluded, there is not a sufficient basis to support the indictment. It follows that the trial court properly suppressed the evidence and dismissed the charges against defendant, and the order appealed from should be affirmed in its entirety.

Tobriner, J., and Sullivan, J., concurred.

---

found "in the parking lot at night"; it was still true that some of the nearby businesses had recently been burglarized; defendant gave the same "elaborate" explanation for being there; and Officer Aumond testified there were also "dust disturbances" resembling handprints on the driver's door of the Porsche. Why then do the majority hold the search of the latter to be illegal? It is emphasized (*ante,* p. 797) that the Porsche did not appear "unsecured" and no items of personal property were visible on its seats. But as the presence of those factors does not furnish probable cause to search, their absence is likewise legally insignificant.

The majority also assert that defendant was not "near or about" the Porsche when Officer Aumond arrived on the scene. But the officer testified the distance from the Pontiac to the Porsche was "a little bit over the width of a parking space, I'd say, at the outside 10 feet." At that brief distance of a few paces, defendant could equally well have been said to be "near or about" the Porsche too. In drawing a constitutional line between these two parked cars, the majority is simply dispensing justice by the length of the chancellor's foot.