Filed 6/4/26  P. v. Garcia-Lara CA1/5
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>ALVARO EMILIO GARCIA-LARA,<br>    Defendant and Appellant. | A174834<br><br>(Contra Costa County Super. Ct. Nos. 01-24-04541, AP25-00039) |

Defendant Alvaro Emilio Garcia-Lara challenges the reversal by the appellate division of the Contra Costa Superior Court (appellate division) of a lower court order granting his motion to suppress evidence collected during an investigation for driving under the influence (DUI) following a traffic stop. (Pen. Code, § 1538.5, subd. (m).)[1]

We granted defendant's motion to certify this case for transfer from the appellate division to resolve the issue of whether a police officer's observation of a driver's red, glossy eyes and strong odor of cologne provided reasonable suspicion to conduct a DUI investigation after instigating a traffic stop.  We now conclude these observations, without more, do not provide the requisite reasonable suspicion.  Accordingly, we reverse the appellate division's

---

[1] Unless otherwise specified, all statutory citations herein are to the Penal Code.

1

judgment, reinstate the trial court's grant of defendant's motion to suppress, and remand this matter to the trial court for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On November 16, 2024, around 2:25 a.m., Concord Police Officer Zachary Schaffer saw a gray vehicle stopped at a red light at an intersection. The vehicle then proceeded to drive through the intersection while the light remained red, prompting Officer Schaffer to instigate a traffic stop to address the red light violation.

Officer Schaffer contacted the driver, later identified as defendant, and asked for identification.[3] Officer Schaffer noticed defendant had red, glossy eyes and a strong odor of cologne. Based on these observations, Officer Schaffer suspected defendant may have been intoxicated. However, because defendant indicated that he only spoke Spanish, Officer Schaffer paused the traffic stop to request assistance from a Spanish-speaking officer. Officer Molina, who spoke Spanish, arrived within about three minutes.

With language assistance from Officer Molina, defendant advised Officer Schaffer that he had been working construction earlier that evening. The officer did not notice any odor of alcohol emanating from defendant. Nonetheless, Officer Schaffer "[i]mmediately" began a DUI investigation, instructing defendant to exit his vehicle to undergo field sobriety tests (FST). Defendant was later arrested for a DUI.

On December 6, 2024, a complaint was filed charging defendant with three misdemeanors: driving under the influence of alcohol (Veh. Code,

---

[2] Our recitation of the facts is taken from the police report produced by the prosecution during discovery and the transcript of testimony from Officer Zachary Schaffer at the hearing on defendant's motion to suppress.

[3] Defendant produced a Nicaraguan identification card rather than a valid driver's license.

§ 23152, subd. (a); count 1); driving with 0.08 percent blood-alcohol content (Veh. Code, § 23152, subd. (b); count 2); and driving a motor vehicle without a valid driver's license (Veh. Code, § 12500, subd. (a); count 3).

On February 10, 2025, after his arraignment, defendant filed a motion to suppress evidence obtained in connection with the traffic stop on November 16, 2024, including his responses to pre-FST questions from the officer, his performance on the FST's, and the results of a preliminary alcohol screening and chemical test.

Following a hearing on April 4, 2025, the trial court granted his motion with respect to all evidence relating to the DUI investigation after defendant was instructed to exit his vehicle. The court reasoned that having red, glossy eyes and wearing cologne "are not in themselves a sufficient indication . . . that there is a basis for prolonging an otherwise legitimate traffic stop [for a red light violation] into a get out of the car and do FSTs type DUI investigation."

The prosecution appealed the trial court's order, and on September 30, 2025, the appellate division reversed. In its written opinion, the appellate division concluded: "[T]he information available to Officer Shaffer did rise to the level of reasonable grounds to suspect that [defendant] was driving under the influence of alcohol." "We are not aware of any requirement that an officer who has reasonable grounds to believe that a driver may be driving under the influence of alcohol must conduct a further investigation to ascertain whether there is an adequate basis for conducting a DUI investigation."

On October 13, 2025, defendant filed an application for certification for transfer and review to this court, which the appellate division denied.

3

On November 13, 2025, defendant filed a petition for transfer in this court, which we granted.

## DISCUSSION

The sole issue before this court is whether Officer Schaffer had reasonable suspicion to conduct a DUI investigation after stopping defendant for a red light violation based on the officer's observations that defendant had red, glossy eyes and smelled strongly of cologne. We think not.

### I. *Legal Framework.*

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. (U.S. Const., 4th Amend.) As such, a defendant may move to suppress evidence on the grounds that the search or seizure without a warrant was unreasonable. (§ 1538.5, subd. (a)(1)(A).) "[T]he burden to show proper justification for [a warrantless search and seizure] rest[s] on the prosecution." (*People v. Gale* (1973) 9 Cal.3d 788, 795.)

A seizure occurs for purposes of the Fourth Amendment when an officer, "by means of physical force or show of authority," restricts a person's liberty. (*Terry v. Ohio* (1968) 392 U.S. 1, 19, fn. 16 [20 L.Ed.2d 889].) "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.)[4]

---

[4] A "reasonable suspicion" to detain requires a lesser showing than "probable cause" to arrest. Not only can " 'reasonable suspicion . . . be established with information that is different in quantity or content than that required to establish probable cause, but also . . . reasonable suspicion can arise from information that is less reliable than that required to show

" 'Ordinary traffic stops are treated as investigatory detentions for which the officer must be able to articulate specific facts justifying the suspicion that a crime is being committed.' " (*People v. Suff* (2014) 58 Cal.4th 1013, 1053–1054.) Thus, "[a] seizure for a traffic violation justifies a police investigation of that violation. . . . [T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop [citation] and attend to related safety concerns [citation]. Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.' [Citations.] Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." (*Rodriguez v. United States* (2015) 575 U.S. 348, 354 [191 L.Ed.2d 492], 1st & 2d bracketed insertions added (*Rodriguez*); see *id.* at p. 355 [an officer's "mission" during a traffic stop includes addressing the traffic violation; checking the driver's license, registration, and proof of insurance; and determining whether the driver has outstanding warrants—all of which "serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly"].)

Under certain circumstances, an officer conducting a traffic stop may also investigate a suspected crime unrelated to the infraction that initially prompted the stop. However, the officer "may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." (*Rodriguez, supra*, 575 U.S. at p. 355; accord, *People v. Ayon* (2022) 80 Cal.App.5th 926, 940 (*Ayon*) [the Fourth Amendment requires officers to " 'diligently pursue[] a means of investigation

_____

probable cause.' " (*People v. Souza, supra*, 9 Cal.4th at pp. 230–231, quoting *Alabama v. White* (1990) 496 U.S. 325, 330 [110 L.Ed.2d 301].)

5

reasonably designed to confirm or dispel their suspicions quickly' "].) Thus, an articulable and reasonable suspicion that a person is driving while impaired is required to extend a routine traffic stop to involve a more intrusive DUI investigation requiring the driver to exit his or her vehicle to perform FST's. (*Ayon*, at p. 941; see *People v. Evans* (2011) 200 Cal.App.4th 735, 742 [an officer's subjective beliefs are generally irrelevant to the lawfulness of a search and seizure].)

Here, the trial court found that Officer Schaffer's prolonging the traffic stop in order to investigate defendant for a DUI by having him exit the vehicle to undergo FST's was not independently supported by individualized, reasonable suspicion. We agree with this conclusion.

" 'In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.' " (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 232.) "In doing so we do not consider each fact in isolation. Instead, 'we must consider "the totality of the circumstances—the whole picture." ' " (*People v. Flores* (2024) 15 Cal.5th 1032, 1043 (*Flores*); see *People v. Linn* (2015) 241 Cal.App.4th 46, 56 [when a misdemeanor appeal is certified for transfer to the appellate court, the Court of Appeal's "review is as if the parties directly appealed from the trial court ruling on defendant's suppression motion"].)

Our record, considered objectively and in its totality, fails to support a reasonable suspicion that defendant was driving under the influence of alcohol or otherwise engaged in criminal activity. Officer Schaffer testified that he suspected defendant may have been intoxicated and, therefore,

6

decided to conduct a DUI investigation based on two factors:  defendant had red, glossy eyes and smelled strongly of cologne.  These factors are not enough to provide reasonable suspicion of a DUI crime.  (See *Flores, supra*, 15 Cal.5th at p. 1045 [the defendant's presence "in a 'known narcotic[s] area[],' where the officer had arrested someone for drug-related crimes the night before, does not tip the scales in favor of detention," when the officer did not see the defendant "engage in any conduct suggesting he was there to buy or sell drugs or was otherwise involved in illegal conduct"]; *Ayon, supra*, 80 Cal.App.5th at p. 940 [finding no substantial evidence to support the officer's claim that the defendant appeared intoxicated when the defendant "did not display any conduct demonstrating insobriety, such as slurred or irregular speech, an inability to walk or stand normally, confusion, or any other mental incapacity," and he was not "acting any more nervously than a typical person in a traffic stop"].)

The People suggest that Officer Schaffer knew from his training and experience that impaired drivers tend to try to mask smells of alcohol with cologne and often exhibit defendant's driving pattern of coming to a stop before running through a red light.  They argue:  " 'Experienced police officers naturally develop an ability to perceive the unusual and suspicious which is of enormous value in the difficult task of protecting the security and safety of law-abiding citizens.' (*People v. Courtney* (1970) 11 Cal.App.3d 1185, 1190.)"

Firstly, it is questionable whether Officer Schaffer was, in fact, an "experienced police officer" given that he was sworn in as a peace officer just three months before defendant's arrest.  In any event, putting aside his limited experience, we disagree that the factors Officer Schaffer relied on— red, glossy eyes and a strong scent of cologne—created a reasonable suspicion that defendant was driving under the influence.

7

As the California Supreme Court has emphasized:  "A mere deviation from perceived social convention does not automatically signal criminal behavior.  The particular conduct relied upon must, when considered in the totality of circumstances, support a reasonable suspicion that the person to be detained is, or is about to be, engaged in activity 'relating to crime.' " (*Flores, supra*, 15 Cal.5th at p. 1045.)  Thus, when an officer perceives something odd yet not in and of itself suggestive of criminal activity—such as in *People v. Jackson* (2024) 100 Cal.App.5th 730, a nervous driver sitting awkwardly and wearing "a big bulky jacket on what feels to be a hot humid night"—the officer's perception, without more, "is unremarkable because a universe of alternative explanations exists."  (*Id.* at p. 738; accord, *In re L.G.* (2025) 108 Cal.App.5th 818, 822 ["Nervousness, an unrelated arrest, and a gang companion did not create reasonable suspicion L.G. was at that moment committing a crime"].)

The same is true here.  A driver, such as defendant, wearing strong cologne and having red, glossy eyes after completing a day's work at a construction site, is unremarkable given the multitude of plausible explanations having nothing to do with alcohol impairment.  (Cf. *People v. Russell* (2000) 81 Cal.App.4th 96, 102–104 [reasonable suspicion justified drug investigation during traffic stop when multiple objective factors were present *in addition to* the defendant's red and watery eyes and an "overwhelming masking odor," including defendant's erratic driving, his nervousness, and the "absence of car owner, presence of pager and cell phone, dashboard screw indicating possible removal, etc."]; *U.S. v. Torres-Sanchez* (9th Cir. 1996) 83 F.3d 1123, 1125–1126 [officer had reasonable suspicion to conduct a further criminal investigation after stopping a driver for suspected speeding, lack of license plates, and illegally tinted windows when the driver

8

"was extremely nervous," the occupants did not own the vehicle and did not have a vehicle registration, and the officer "noticed a strong smell of cologne in the car"].)

Indeed, in this case, there is no objective evidence defendant was engaged in conduct related to the crime of driving under the influence. Defendant's vehicle was not weaving or swerving. Defendant did not have difficulty producing a form of identification or operating the vehicle's controls. He did not admit to drinking. There was no odor of alcohol. Defendant's speech was not slurred, and he did not appear uncooperative, confused, or especially nervous. As defendant correctly notes, "favorable answers, observations, [and] perceptions must be regarded by the detaining officer as suspicion-allaying . . . ." (*Pendergraft v. Superior Court* (1971) 15 Cal.App.3d 237, 242.)[5]

The People pivot, emphasizing that the trial court found "the otherwise legitimate traffic stop was prolonged not because there was insufficient evidence to suggest [defendant] was under the influence, but because he was ordered to '*get out of the car* and do FSTs.' " They argue that "because an officer may order a driver out of a vehicle as a matter of course during a traffic stop, it cannot reasonably be found that such an order in this case unduly prolonged the detention or violated [his] Fourth Amendment rights." This argument, we conclude, mischaracterizes our record.

---

[5] Defendant identifies his ethnicity as Latino and argues that the wearing of cologne may have been a "racially coded indicator[]" relied upon by the officer to prolong the detention. He relies on a consumer marketing study related to fragrance use by various ethnic groups in the United States. However, because this study is not part of our record on appeal, we decline to consider it.

In fact, the trial court ruled there was an insufficient factual basis for prolonging an otherwise legitimate traffic stop into a "get out of the car *and do [an] FSTs type DUI investigation*." (Italics added.) Thus, the court was concerned that the officer required defendant to undergo sobriety testing *after* he got out of the car, not just that he ordered defendant out. It is well established that, on appeal, we draw all inferences from the record in favor of the trial court's ruling and "defer to the trial court's factual findings, express or implied, where supported by substantial evidence." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

In so holding, we agree with the People that, at the hearing, the trial court limited questioning on what took place after Officer Schaffer instructed defendant to exit the vehicle. Specifically, when the prosecutor asked Officer Schaffer, "[W]hat, if anything, did you observe when he stepped out of the vehicle?" the court sustained defense counsel's objection that the question was: "Beyond the scope." However, in response, the prosecutor did not challenge the court's ruling, much less make a record as to why further questioning was, in fact, warranted. Instead, the prosecutor stated, "No further questions."

As stated *ante*, the prosecution, not defendant, had the burden to prove Officer Schaffer's warrantless search was justified. (*People v. Gale, supra,* 9 Cal.3d at p. 795.) As such, to the extent the record on appeal leaves unanswered questions regarding Officer Schaffer's dialogue with defendant while conducting the DUI investigation, we decline to resolve them, on the basis of conjecture, in the People's favor. In any event, the record is quite clear as to the following. Officer Schaffer testified that after pulling defendant over for running a red light, he paused the traffic stop to await the arrival of Officer Molina, a Spanish-speaking officer who could converse with

10

defendant in his native language. Officer Molina arrived about three minutes later. At that point, according to Officer Schaffer's testimony, he "[i]mmediately" pivoted away from the traffic stop in order to conduct the DUI investigation. It was during this investigation that Officer Schaffer ordered defendant to undergo the FST's—the evidence of which was the subject of defendant's suppression motion.

Thus, on this basis, we conclude Officer Schaffer prolonged the traffic stop beyond the " 'time reasonably required to complete [the stop's] mission [of addressing defendant's red light violation]' " in order to conduct a DUI investigation that lacked a legal justification. Viewing the entire record objectively, there is no evidence establishing reasonable suspicion to believe defendant was driving under the influence of alcohol. (*Rodriguez, supra*, 575 U.S. at p. 357, 2d bracketed insertion added.) While "officers may 'draw on their own experience and specialized training to make inferences,' " they cannot "rely on mere hunches." (*People v. Hernandez* (2008) 45 Cal.4th 295, 299.)

Accordingly, because defendant was unlawfully detained, all evidence collected during his detention must be suppressed. As our high court instructs: "The Fourth Amendment recognizes a measured framework for acceptable official intrusion upon the life of any individual. Police officers and private individuals may well occupy the same public space and have no particular interaction. . . . But before an officer can compel compliance with a show of authority, articulable facts must support a reasonable suspicion of criminal activity. In the absence of such facts, the person is constitutionally protected and empowered to go on his or her way." (*Flores, supra*, 15 Cal.5th at p. 1051.)

## DISPOSITION

The judgment of the appellate division is reversed, and the trial court order granting defendant's suppression motion is reinstated. The matter is remanded to the trial court for further proceedings consistent with this opinion.

Jackson, P. J.

WE CONCUR:

Burns, J.
Chou, J.

A174834/*People v. Alvaro Emilio Garcia-Lara*