[No. F010553. Fifth Dist. July 26, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
DUANE EDWARD HOLT, Defendant and Appellant.

COUNSEL

George L. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Arnold O. Overoye, Gary A. Binkerd, George M. Hendrickson and Jesse Witt, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

FRANSON, P. J.—

### STATEMENT OF THE CASE

After his suppression motion was denied, appellant Duane Edward Holt pleaded guilty to one count of possession of methamphetamine (Health & Saf. Code, § 11377) and one count of carrying a loaded firearm (Pen. Code, § 12031, subd. (a)). Appellant was sentenced on these crimes to prison terms consecutive to an unrelated first degree murder conviction.

Appellant's convictions of methamphetamine and firearm possession must be reversed because of unlawful conduct by a police officer in seizing an aluminum foil-wrapped container from appellant's front pants pocket without probable cause to believe the container contained contraband. Because the methamphetamines and the gun were the product of the unlawful seizure of the foil container, the evidence should have been suppressed. (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 484-485 [9 L.Ed.2d 441, 453-454, 83 S.Ct. 407].)

## STATEMENT OF FACTS

On April 26, 1985, about 5:45 p.m., Fresno Police Officer Steve Williams was dispatched to 3100 East Pine Street. He saw two vehicles illegally parked in the middle of the street facing west. One vehicle, a van, appeared to have cut off a Continental. A woman was seated in the middle of the front seat of the Continental, and appellant was standing outside the open driver's side door leaning into the Continental. Officer Williams drove past the cars and parked his vehicle to the rear of the Continental.

As Williams approached the vehicle, appellant walked back to meet him. Appellant said "everything was cool," they were "just talking." The woman, Gina Kent, was crying but said she was all right. As Williams leaned into the car to speak with Kent, appellant was standing to his left. When Williams straightened up out of the car, he noticed appellant had a knife in a sheath on the right-hand side of his belt. Williams decided to remove the knife for his safety and the safety of others because it appeared some sort of disturbance had occurred between Kent and appellant—the cars were parked in an erratic manner, and Kent was crying. Williams was waiting for a second officer to arrive so he could question the parties separately.

Officer Williams pulled the knife out of the sheath and tossed it onto the car roof. As he removed the knife, he saw a large object about the size of a baseball wrapped in aluminum foil bulging the seam of appellant's right pants pocket. Williams suspected the package contained narcotics based on his experience and training in the identification and packaging of narcotics. He attempted to remove the package but was unable to do so because it was so large. While Williams was so employed, appellant reached into his left pants pocket and removed a clear baggie containing a white powder, tossed it onto the car seat and sat on it. Williams pulled appellant from the vehicle, and appellant began to struggle. At that point, Officer Ramos interceded and helped Williams handcuff appellant.

Officer Ramos searched appellant after his arrest and found a loaded ammunition clip on his person. Appellant stated the clip went with his gun

which was in his van. Ramos found a loaded handgun on the driver's side floorboard of the van.

The baggie contained methamphetamine, and the foil ball held $2,900 in $10 and $20 bills.

## DISCUSSION

*Officer Williams had no authority to seize the aluminum foil container in appellant's pocket.*

### Standard of Review

In a trial de novo, the superior court denied appellant's motion to suppress the drugs and the gun. ■ Appellate review of the denial of a motion to suppress involves two steps. First, where the superior court sits as a finder of fact, the appellate court must uphold the superior court's express and implied findings if they are supported by substantial evidence and must indulge all inferences in favor of the court's ruling on the suppression motion. Second, the appellate court exercises its independent judgment to measure the facts, as found by the trier, against the constitutional standard of reasonableness. (*People* v. *Loewen* (1983) 35 Cal.3d 117, 123 [196 Cal.Rptr. 846, 672 P.2d 436].)

### The Seizure of the Foil Container

■ The seizure of plain view property from an individual's person is reasonable if there is probable cause to associate it with criminal activity. (*Texas* v. *Brown* (1983) 460 U.S. 730, 742 [75 L.Ed.2d 502, 514, 103 S.Ct. 1535].) ■ Probable cause is a flexible commonsense standard. It merely requires that the facts available to the officer would warrant a man of reasonable caution to believe that certain items may be contraband. It does not require a showing that such a belief be correct or more likely true than false. A " 'practical, nontechnical' " probability that incriminating evidence is involved is all that is required. (*Ibid.*) Probable cause is an objective standard, i.e., what a reasonable officer would believe under similar circumstances, and not merely a subjective standard based on the officer's personal belief.

■ However, an officer's entry into a person's pocket for narcotics can be justified only if the officer had probable cause to arrest the defendant for possession of narcotics *before* the entry into the pocket. (*People* v. *Valdez* (1987) 196 Cal.App.3d 799, 806-807 [242 Cal.Rptr. 142].) As emphasized in

*Valdez, supra,* the search of an interior pocket for contraband can only be made incident to an arrest, not merely as part of the investigative detention.

■ Courts have recognized certain containers as distinctive drug carrying devices which may be seized upon observation: heroin balloons (*People* v. *Lee* (1987) 194 Cal.App.3d 975 [240 Cal.Rptr. 32]), paper bindles (*People* v. *Lilienthal* (1978) 22 Cal.3d 891 [150 Cal.Rptr. 910, 587 P.2d 706]) and marijuana smelling brick-shaped packages (*People* v. *McKinnon* (1972) 7 Cal.3d 899 [103 Cal.Rptr. 897, 500 P.2d 1097]). Other common containers, however, such as pill bottles, cigarette packs, plastic bags and film canisters are seen as more generic and may not be seized merely because they may be used to store narcotics. (*People* v. *Valdez, supra,* 196 Cal.App.3d at pp. 806-807.) An aluminum foil-wrapped package would fall into the generic category.

*In Remers* v. *Superior Court* (1970) 2 Cal.3d 659 [87 Cal.Rptr. 202, 470 P.2d 11], the Supreme Court specifically dealt with a foil-wrapped container. There, the officer testified he had observed defendant standing in an area known to be a frequent site for narcotics traffic. Defendant looked over either shoulder, removed a foil-wrapped package from her purse and indicated to her companion that they enter a nearby pizza parlor. The officer concluded defendant had a "deal going down" and followed her. In the pizza parlor, one officer asked defendant to go outside for a talk, and the other reached into her purse and removed the foil container which contained Seconal tablets. The Supreme Court held the officer did not have probable cause to arrest and search defendant. One officer testified dangerous drugs are generally packaged in cellophane but he had encountered them in tinfoil before. But for all he knew at the time, the package could have contained cookies. (*Id.* at pp. 663, fn. 2, 666, fn. 4.) The court concluded the events observed were as consistent with innocent activity as with criminal activity. (*Id.* at p. 664.)

The *Remers* court held that the act of showing a foil package to a companion even in an area known to be the site of frequent narcotics traffic was not sufficient cause to arrest. (2 Cal.3d at p. 665.) The court discounted the officers' testimony that dangerous drugs were packaged in tinfoil and Seconal tablets usually were similarly packaged: ". . . even if dangerous drugs are often packaged in tinfoil, so many other, legitimate items—such as food or tobacco—are packaged in tinfoil that a tinfoil package is not a suspicious circumstance, and a man of reasonable caution who possesses the knowledge that dangerous drugs are often packaged in tinfoil would not be justified in assuming, upon seeing a tinfoil package, that it is likely to contain drugs." (*Id.* at p. 666.)

The Supreme Court refined its *Remers* holding somewhat in *People* v. *Lilienthal, supra,* 22 Cal.3d 891. There, the officers stopped defendant for a traffic violation. While defendant fumbled through his wallet for his driver's license, a neatly folded squared piece of paper fell to the ground, and defendant immediately stepped on it. Recognizing the paper packet as one commonly containing unlawful drugs, an officer seized it. It contained cocaine. (*Id.* at p. 898.) The Supreme Court said: "We first consider defendant's challenge to the seizure of the folded paper that fell from his wallet. He argues that Officer Brookbush did not have probable cause to believe that it contained contraband. His argument is unpersuasive, for it completely ignores Officer Brookbush's testimony as to the basis of his suspicion that the paper contained narcotics. Officer Brookbush described the distinctive manner in which the paper was folded and said that his suspicion that it contained narcotics was based on his experience in making numerous arrests where cocaine or heroin was transported in paper bindles similar to the one dropped by defendant. Reasonable grounds for believing a package contains contraband may be adequately afforded by the package's shape, design, and the manner in which it is carried. [Citation.]" (*Id.* at pp. 898-899, fn. omitted.)

A similar case, *People* v. *Huntsman* (1984) 152 Cal.App.3d 1073 [200 Cal.Rptr. 89], held that where the People assert that an officer's probable cause to search is based on observations of a citizen holding a container commonly used for innocent purposes (plastic bag), the People must present testimony indicating the basis for the officer's suspicion that the container held contraband. Whether a common container constitutes a suspicious circumstance capable of contributing to a totality of circumstances necessary for probable cause depends on the total factual context in which the container is observed, including the prior experience of the observing officer with containers of the sort at issue. (*Id.* at pp. 1078, 1088.) For example, although an officer may know that ordinary brown paper bags are commonly used in narcotics transactions, absent evidence that the person carrying such a bag has recently sold narcotics or otherwise possessed narcotics, the act of carrying such a bag by itself will not provide reasonable cause to an officer to suspect the citizen is carrying narcotics. (*Id.* at p. 1088.)

 In this case, Officer Williams testified, based on his seven years in the police department and his training and experience in identifying drug packaging, that he "drew a conclusion that probably the only reason [the foil ball] was in [appellant's] pocket was because it contained a narcotic of some type." The officer stated he had found marijuana, hashish and PCP packaged in aluminum foil on other occasions.

The problem with Officer Williams's testimony is that he did not describe anything distinctive about the foil-wrapped container carried by appellant,

i.e., its size, shape or manner of being carried, which would enable a reasonable person to associate it with narcotics. Nor did Williams describe the foil containers in which he had previously found narcotics as being similar to the size and shape of the container carried by appellant. Unlike balloons, bindles and brick-sized packages which are usually hidden from casual observation, a round shaped foil-wrapped package carried in open view in a front pants pocket, absent some other suspicious circumstances suggesting drug activity, has a generic quality that reasonably suggests the container is being used to carry food such as an apple or an orange rather than narcotics. If we would conclude otherwise, then any time an officer observes such a container in a citizen's possession under circumstances justifying an investigative detention, the officer may arrest the citizen and search his or her person for suspected narcotics. This simply is not the law.

The judgment is reversed.

Best, J., and Dibiaso, J., concurred.