[No. F010306. Fifth Dist. Jan. 2, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
CLIFFORD BROWN, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

---

COUNSEL

Janet J. Gray, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Joel

Carey and Stan Cross, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BEST, Acting P. J.**—Defendant was convicted by jury of possession for sale of cocaine (Health & Saf. Code, § 11351.5). In a bifurcated proceeding the trial court found defendant had served a prior prison term within the meaning of Penal Code section 667.5, subdivision (b). Following defendant's sentence to state prison for a total of six years, less two hundred sixteen days presentence credits, defendant was found to be addicted to cocaine and committed to the California Rehabilitation Center pursuant to Welfare and Institutions Code section 3051.

The issues on appeal are limited to the denial of defendant's motion to suppress evidence and his motion to relieve appointed counsel. We affirm the judgment.

### STATEMENT OF RELEVANT FACTS

Defendant's motion to suppress was submitted on the preliminary hearing transcript. Finding them to be supported by substantial evidence, we adopt the following findings of fact set forth by Judge Stuart during his ruling denying the motion. "In this particular case . . . we have [defendant] standing in front of the dance hall while there were 20 or so people within the general area, not only the dance hall but also the liquor store next door.

"There were only two, perhaps three people standing in the immediate vicinity of the defendant. The officer was able to observe the defendant holding in his hand a paper bag.

"The officers, while merely on patrol, going five to ten miles an hour . . . approached that location and without any activity on their part that would indicate that they intended to detain any one proceeded to approach . . . while still in their vehicle—not the defendant but the area in which the defendant was standing and at that point, . . . people started yelling roller, which is . . . a street term meaning we have got the cops coming by and at that point the crowd disbursed [*sic*].

"· · · · · · · · · · · · · · · ·

"The officers . . . left the area; they called for backup and returned three to five minutes later and at that point saw the defendant again located in front of the dance hall.

"They then stopped at that point in time. The defendant quickly went back into the dance hall and at that point the officer went after him.

". . . . . . . . . . . . . . . . . . . . . .

". . . before the officers ever actually got to him he went into the dance hall and in the bar area, he dropped a sack and then took off again past the police."

The evidence presented at the preliminary hearing established additional relevant facts as follows: When initially observed in front of the dance hall, defendant appeared to be showing some object to the persons standing around him but the officers could not see what the object was.

The officers were in uniform and were in a marked patrol car. When Officer Pryor ran into the dance hall after defendant, the officer's weapon was holstered and his nightstick was on his belt. Although he did not do so, Officer Pryor believed he heard someone yell, "Stop" when he started into the dance hall after defendant.

Although physically apprehended by Officer Willoughby after he dropped the paper bag and attempted to run by the officers, defendant was not placed under arrest until after Officer Pryor picked up the paper bag and inside observed a ziploc bag containing what appeared to be rock cocaine.

██ We note that Officer Pryor's testimony at the preliminary hearing that the "area is known for narcotics transactions" was ordered stricken by the magistrate.[1]

## DISCUSSION

### I. SUPPRESSION MOTION

██ Defendant contends the trial court erred in denying his Penal Code section 1538.5 motion to suppress the contents of the brown paper bag.

---

[1] We further note that striking that testimony was not legally mandated. Our Supreme Court has only held that such evidence *standing alone* is not sufficient to justify an investigative stop or detention. (See *People* v. *Aldridge* (1984) 35 Cal.3d 473, 478 [198 Cal.Rptr. 538, 674 P.2d 240]; *In re Tony C.* (1978) 21 Cal.3d 888, 897 [148 Cal.Rptr. 366, 582 P.2d 957].)

██ "Appellate review of the denial of a motion to suppress involves two steps. First, where the superior court sits as a finder of fact, the appellate court must uphold the superior court's express and implied findings if they are supported by substantial evidence and must indulge all inferences in favor of the court's ruling on the suppression motion. Second, the appellate court exercises its independent judgment to measure the facts, as found by the trier, against the constitutional standard of reasonableness. [Citation.]" (*People* v. *Holt* (1989) 212 Cal.App.3d 1200, 1204 [261 Cal.Rptr. 89].) In denying the motion to suppress, Judge Stuart made the following observations: " . . . I find that the officer had objectively [*sic*] facts which could reasonably and properly be interpreted to mean that the defendant was involved in the possession but, more importantly, the sale of narcotics, the combination of them, standing there, holding the bag, it being out in a public place and leaving the area when the police came by, being back out there, him running the second time in that particular neighborhood and I agree the neighborhood alone is not sufficient but it is a factor even as indicated in People v. Washington.

"I think at that point the officers had probable cause to believe that [defendant] was involved in illegal activities and they had a right to go up and detain him, but given what happened in this particular matter, namely that before the officers ever actually got to him he went into the dance hall and in the bar area, he dropped a sack and then took off again past the police.

"I really think that this probably is within the meaning of People v. Patrick, the last sentence, quote, defendant could not immunize himself from damaging evidence by discarding that evidence on his subjective assumption that an illegal search would follow his detention, period, end quotes.

"His objective [*sic*] assumption was probably correct but he didn't even give the officers an opportunity to come up and make the detention."

The lower court made three findings in this case. First, the court found the officers had reasonable cause to detain defendant. Second, it found that no detention actually took place until after defendant discarded the paper bag by dropping it on the floor. Third, the court found that the paper bag was abandoned when it was discarded.

Our standard of review when faced with a challenge to the denial of a motion to suppress pursuant to Penal Code section 1538.5 has been clearly set forth by our high court: " 'An appellate court's review of a motion to suppress evidence is also governed by well-settled principles. The trial

court's factual findings relating to the challenged search or seizure, 'whether express or implied, must be upheld if they are supported by substantial evidence.' [Citation]." (*People* v. *Loewen* (1983) 35 Cal.3d 117, 123 [196 Cal.Rptr. 846, 672 P.2d 436].)

"In *People* v. *Lawler* (1973) 9 Cal.3d 156, 160, . . . we discussed the two-step process by which a superior court rules on a motion to suppress evidence under section 1538.5, and the different standard by which an appellate court reviews each of those steps. In the first step the trial court must 'find the facts' relating to the challenged search or seizure: e.g., it must decide what the officer actually perceived, or knew, or believed, and what action he took in response. These are traditional questions of fact, and the statute vests the superior court with the power to decide them. (Pen. Code, § 1538.5, subd. (i).) Accordingly, we reaffirmed in *Lawler* (at p. 160) that for the purpose of finding those facts 'the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence.'

"No less important, however, is the second step of the process. As we observed in *Lawler,* 'The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution.' (*Ibid.*) Because 'that issue is a question of law,' the appellate court is not bound by the substantial evidence standard in reviewing the trial court's decision thereon. Rather, we explained, in such review it is 'the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness.' (*Ibid.*) On that issue, in short, the appellate court exercises its independent judgment." (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961], fn. omitted.)

Plaintiff candidly and correctly concedes that a detention took place when the officers yelled for defendant to stop and chased him into the dance hall. "In the present case, respondent does not argue that there was no detention. . . . (Cf. *Michigan* v. *Chesternut* (1988) 486 U.S. 567 [100 L.Ed.2d 565, 108 S.Ct. 1975].).''

 The crucial question then becomes whether the officers had reasonable cause to detain defendant. In the area of investigative stops and detentions the test has also become well settled: "The law is well-established that 'in order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts

causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citations], to suspect *the same criminal activity and the same involvement* by the person in question. The corollary to this rule, of course, is that an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. [Citations.]" (*People* v. *Loewen, supra,* 35 Cal.3d 117, 123.)

In *Irwin* v. *Superior Court* (1969) 1 Cal.3d 423 [82 Cal.Rptr. 484, 462 P.2d 12], the court stated at page 427, "Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful." In *In re Tony C., supra,* 21 Cal.3d 888, the court disapproved of this language and clarified the law as follows: "Reconsidering the matter, we are of the view that the *Irwin* dictum cannot be squared with the rule that a reasonable suspicion of involvement in criminal activity will justify a temporary stop or detention. Under that standard, if the circumstances are 'consistent with criminal activity,' they permit—even demand—an investigation: the public rightfully expects a police officer to inquire into such circumstances 'in the proper discharge of the officer's duties.' (*People* v. *Flores, supra,* 12 Cal.3d at p. 91.) No reason appears for a contrary result simply because the circumstances are also 'consistent with lawful activity.' The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact illegal—to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer to charges.' (*People* v. *Manis* (1969) *supra,* 268 Cal.App.2d 653, 665.) The citizen's undoubted interest in freedom from abuse of this procedure is protected—so far as it is within the law's power to do so—by the correlative rule that no stop or detention is permissible when the circumstances are not reasonably 'consistent with criminal activity' and the investigation is therefore based on mere curiosity, rumor, or hunch. Because the *Irwin* dictum is thus in conflict with the settled standards for dealing with this sensitive problem, it is disapproved." (*Id.* at p. 894.)

In the course of discussing the "practical, common-sense judgment called for in making a probable-cause determination" (*Illinois* v. *Gates* (1983) 462 U.S. 213, 244 [76 L.Ed.2d 527, 552, 103 S.Ct. 2317]), the United States Supreme Court makes the following observation: "As discussed previously,

probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens' demands. . . . In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." (*Ibid.*, fn. 13.)

■ Applying these guidelines to the case at hand, we conclude that under the circumstances shown by the evidence any reasonable police officer in the position of Officers Pryor and Willoughby would have suspected that defendant was engaging in criminal activity, namely, selling drugs. Defendant was standing in front of a dance hall around 11:35 p.m. when he was spotted by Officer Pryor as Pryor approached at a slow speed in his marked patrol car. Defendant was facing the street, with his back to the dance hall. A group, forming a semicircle, was gathered around him. The individuals in the group had their backs to the street and the officers. Defendant held a small brown paper bag in one hand. The top of the bag was rolled down, and defendant was holding it out toward the group. He appeared to be showing something to the other individuals in the group, but the officers could not tell what it was or what was in the bag. Some people began yelling, "roller," a street reference to a patrol car. Those in the group turned toward the officers and then dispersed immediately, with people quickly walking away in different directions. Defendant quickly walked into the dance hall. Pryor drove on and returned in about five minutes or less. Once more, defendant was in front of the dance hall, and again he quickly walked inside upon seeing the officers.

In an earlier day before the traffic in illicit drugs became endemic to our society, the above circumstances might not—and probably would not— have been consistent with criminal activity. Unfortunately, times have changed, and a multitude of controlled substances are openly bought and sold on our streets and in our neighborhoods. To any police officer knowledgeable of such conditions, the circumstances above described would not only raise, but almost compel, a reasonable suspicion that conduct "consistent with criminal activity" was taking place.

*People* v. *Washington* (1987) 192 Cal.App.3d 1120 [236 Cal.Rptr. 840], which is relied upon by defendant, is distinguishable. There, the defendant was seen from the street standing in a courtyard talking in a huddle with several other men. Although it was night, police officers could see hand movement inside the huddle. However, they were unable to see what was in

the hands of the members of the group. As the officers approached, the members of the group looked at them and quickly dispersed. Defendant was selected at random and followed for less than a block. One of the officers called out to him, and defendant responded by asking if it was him that they wanted. When they responded affirmatively, he ran. He was caught a short distance later after being seen dropping a plastic bag. The bag was found to contain contraband. (*Id.* at pp. 1122-1123.) The defendant's motion to suppress was denied.

On appeal, the defendant argued the police did not have sufficient facts to warrant a lawful detention or investigative stop. (*People* v. *Washington, supra*, 192 Cal.App.3d at p. 1123.) The court agreed, first finding that a detention took place when the officers chased defendant, making it clear he was not free to leave. The court found the hand gestures "inconclusive and unrevealing." The time of day the detention took place was not so late or unusual as to be significant, and no one in the group attempted to conceal themselves or made furtive gestures. (*Ibid.*) The court was not convinced by the fact the officers witnessed these acts in a high crime area. (*Ibid.*) Also of concern to the court was that the officers had no justification for pursuing defendant over the other individuals who dispersed with him. In reversing, the court concluded: "Here, the officers conceded they had no objective factors upon which to base any suspicions that the group was involved in illegal activity, and the officers offered no explanation why they singled out defendant to follow. Indeed, the only justification for engaging in pursuit was that defendant was a Black male, and that it was the officer's subjective belief that Black men run from police when they have something to hide. Thus, a single factor—the defendant's race—triggered the detention." (*Id.* at p. 1128.) Consequently, " 'abandonment' of the cocaine was the fruit of the illegal detention." (*Id.* at p. 1127.)

██ In this case, defendant's act of dropping the bag before making a last-ditch effort to evade the police supports the trial court's finding that defendant indeed abandoned the paper bag and lost any reasonable expectation of privacy in its contents.

"Abandonment is primarily a question of intent, and intent may be inferred from words, acts, and other objective facts. [Citations.] Abandonment here is not meant in the strict property-right sense, but rests instead on whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search. [Citations.]" (*United States* v. *Jackson* (9th Cir. 1976) 544 F.2d 407, 409.) ██ Since we have found that the officers had reasonable cause to detain defendant, the abandonment of the bag was not the fruit of an illegal detention.

## II. DID THE COURT ERR BY DENYING DEFENDANT'S MOTION FOR SUBSTITUTION OF COUNSEL?*

. . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Stone (W. A.), J., and Dibiaso, J., concurred.

A petition for a rehearing was denied January 29, 1990, and appellant's petition for review by the Supreme Court was denied March 29, 1990.

---

* See footnote, *ante*, page 1442.