[No. E006407. Fourth Dist., Div. Two. June 8, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES WAYLEN NICKLEBERRY, Defendant and Appellant.

## COUNSEL

Stephen B. Shore and John G. Wurm, under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Holly D. Wilkens and Karl T. Terp, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ZIEBARTH, J.*—The People charged defendant with violation of Health and Safety Code section 11351.5, possession for sale of cocaine base, a felony. They further alleged that defendant had been convicted of a prior offense pursuant to Penal Code section 667.5, subdivision (b);[1] the prior offense being violation of section 459, first degree burglary.

Defendant filed a motion to suppress evidence pursuant to section 1538.5 in the superior court, seeking to suppress the cocaine which was seized

---

* Assigned by the Chairperson of the Judicial Council.

[1] All further statutory references are to the Penal Code unless otherwise indicated.

when defendant was arrested. The court held a hearing to determine the admissibility of the disputed evidence; it ruled the evidence admissible.

The trial court granted the People's motion to amend the information to charge possession of cocaine (Health & Saf. Code, § 11350), and defendant changed his plea to guilty and admitted the truth of the prior offense. He was sentenced to state prison for the lower term of one year, four months for possession of cocaine and one year for the prior felony conviction, to be served consecutively for a total term of two years, four months.

I

FACTS

At approximately 12:05 a.m. one morning Officers Ruston, and his partner Rice, and Cavender, and his partner Grotkin were in two unmarked vehicles patrolling the area around the corner of Loma Vista and Lou Ella Streets in Riverside. The area was known by Officer Ruston to be one of high narcotic trafficking activity. The officers were members of the gang intelligence unit and they were wearing police raid jackets which had police department patches on both shoulders.

Officer Ruston was driving the first car. As he was driving past the corner he noticed defendant approaching another individual on the sidewalk of the north side of Loma Vista. He saw defendant take his hand from his pocket. As Officer Ruston drove parallel to defendant he observed defendant look at him and have brief eye contact with him. While Officer Ruston was watching, defendant put his hands in his pockets and then took off running. After defendant took off, Officer Ruston stopped his car, got out and followed defendant on foot. Officer Ruston had not done or said anything to defendant prior to his taking off running. Defendant was about 15 to 20 feet ahead of Officer Ruston.

As defendant ran, he went through a wet grass area where sprinklers had just been activated. He also dropped something from his left hand. It was a small, white object, round in shape. Officer Ruston believed it to be rock cocaine. Again, the officer had not yelled at defendant to stop or done anything else before defendant dropped or threw the object to the ground. As defendant continued to run, he was "pawing" and pulling at a large object in his right pocket which Officer Ruston believed could be a weapon. Up to this point, Officer Ruston did not have his gun drawn. Officer Ruston then ordered defendant to stop, which he did. The item in his pocket turned out to be a Walkman tape player.

While Officer Ruston was pursuing defendant, Officers Cavender and Grotkin followed in an unmarked vehicle around the turn at Loma Vista and Lou Ella. Officer Grotkin saw defendant running, Officer Ruston pursuing, and defendant discarding something. Officer Grotkin drove past defendant and turned the car, blocking defendant's path. The vehicle with Officers Cavender and Grotkin pulled in front of defendant at approximately the same time Officer Ruston ordered defendant to stop, but Officer Ruston reached defendant first before Officers Cavender and Grotkin got out of their car.

Officers Ruston and Grotkin then retraced defendant's footsteps and retrieved a crushed piece of rock cocaine. They also recovered an additional piece of rock cocaine on the corner where defendant and the other individual had been standing when Officer Ruston first noticed them.

Officer Ruston had stopped his vehicle and started following defendant on foot to determine "why he was running." He believed that "there was some type of transaction that was going to take place."

## II

### DISCUSSION

Defendant's appeal is based solely on the denial of his motion to suppress evidence. Specifically, defendant claims that the trial court erred in failing to exclude as the product of an unlawful detention the rock cocaine which he threw while running away from Officer Ruston. In its explanation on the record as to the reasons it was denying defendant's motion, the trial court stated as follows:

"I'm going to deny the motion to suppress finding there was, in fact, no detention by the officers until the defendant was stopped across the street; that the item in the middle of the street was discarded voluntarily before there was any detention, and I don't think in this case that pursuit itself was a detention. The detention occurs at the end of the pursuit."

We agree with the trial court's conclusion that there was no detention of defendant at the moment that he discarded the rock cocaine. Therefore the denial of the motion to suppress was proper.

To begin with, in cases in which a suppression motion was not made at the preliminary hearing, a proceeding under section 1538.5 is a full

hearing on the issue before the superior court, sitting as the finder of fact. (§ 1538.5, subd. (i); *People* v. *Superior Court* (1974) 10 Cal.3d 645, 649 [111 Cal.Rptr. 565, 517 P.2d 829].) The power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence, and draw factual inferences is vested in the trial court. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596 [174 Cal.Rptr. 867, 629 P.2d 961].) On appeal, all presumptions favor the proper exercise of that power and the trial court's factual findings, whether express or implied, must be upheld if supported by substantial evidence. (*Ibid.*; *People* v. *Superior Court* (*Keithly*) (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585]; *People* v. *Gale* (1973) 9 Cal.3d 788, 792 [108 Cal.Rptr. 852, 511 P.2d 1204].) It is only after the findings of the trial court have been considered and a determination made as to whether the trial court's findings are supported by substantial evidence that the appellate court determines if on the facts, there was a detention. Upon such pure questions of law, the appellate court exercises its independent judgment. (*Leyba, supra,* at p. 597.)

■ Since the enactment of Proposition 8 (Cal. Const., art. I, § 28), the appellate court has been limited to review of the officers' conduct in light of the Fourth Amendment of the United States Constitution and the boundaries it provides for the suppression of evidence. (*In re Lance W.* (1985) 37 Cal.3d 873, 887 [210 Cal.Rptr. 631, 694 P.2d 744].) We therefore start our analysis with a review of federal law to determine if there is a United States Supreme Court case that is controlling based on the particular fact situation in the case at bench.

■ The one matter that both parties seem to agree on in the case at bench is that the most important question is whether the decision by the Supreme Court in *Michigan* v. *Chesternut* (1988) 486 U.S. 567 [100 L.Ed.2d 565, 108 S.Ct. 1975], is controlling because of the similarity of the facts in the two cases. The respondent argues that *Chesternut* is controlling; defendant argues to the contrary.

Defendant attempts to distinguish the case at bench from *Chesternut* by claiming that "*Chesternut* held the described evidence admissible because [,] unlike the case at bench, the police conduct in question was not sufficiently intimidating to constitute a detention." A careful comparison of the facts in *Chesternut* and the instant case does not support that attempt to distinguish *Chesternut* from the instant case on a factual basis. We have therefore concluded that *Chesternut* is controlling.

In *Michigan* v. *Chesternut, supra,* 486 U.S. at page 569 [100 L.Ed.2d at page 569], several police officers were riding in a marked police car which

approached a street corner. A man standing at the corner turned and started running. (*Ibid.*) The police car followed him around the corner, speeding up to overtake him, and then drove beside him for a short distance. (*Ibid.*) While the car was beside the man, the officers saw him discard a number of packets from his pocket. (*Ibid.*) An officer got out of the car to look at the packets, which contained pills. (*Ibid.*) Shortly thereafter the man stopped running. (*Ibid.*) Suspecting that the pills were codeine, the officer arrested the man. (*Ibid.*) When searched at the stationhouse, the man was found to possess additional illegal drugs. (*Ibid.*) He was charged with several counts of possession of illegal drugs. (*Ibid.*) He moved for dismissal of the charges on the ground that the police officers' conduct before his disposal of the packets was an unlawful seizure of his person under the Fourth Amendment, unjustifiable under the circumstances of the case. (*Ibid.*) A magistrate ordered the case dismissed, the trial court upheld the order of dismissal, and the Michigan Court of Appeals affirmed. (*Id.*, at p. 570 [100 L.Ed.2d at p. 570].)

The Supreme Court reversed the judgment. (*Michigan* v. *Chesternut, supra*, 486 U.S. at p. 576 [100 L.Ed.2d at pp. 573-574].) In a unanimous opinion it held that the acceleration of a police car to catch up with the defendant who ran upon seeing the police, followed by the car's short drive alongside him, did not constitute a "seizure" within the meaning of the Fourth Amendment. (*Id.*, at pp. 572-573 [100 L.Ed.2d at pp. 571-572].)

In the *Chesternut* case, the prosecution argued "that the Fourth Amendment is never implicated until an individual stops in response to the police's show of authority." (*Michigan* v. *Chesternut, supra*, 486 U.S. at p. 572 [100 L.Ed.2d at p. 571].) Therefore even the lack of objective and particularized suspicion on the part of the law enforcement officers would not poison their conduct, no matter how coercive, as long as they do not succeed in actually apprehending the individual. (*Ibid.*) The defendant in sharp contrast contended that any and all police chases are Fourth Amendment seizures. (*Ibid.*) Therefore the police may never pursue an individual "absent a particularized and objective basis for suspecting that he is engaged in criminal activity." (*Ibid.*)

The Supreme Court in *Chesternut* rejected both arguments and instead continued its middle of the road approach by reiterating the test established in the earlier case of *United States* v. *Mendenhall* (1980) 446 U.S. 544 [64 L.Ed.2d 497, 100 S.Ct. 1870]. (*Michigan* v. *Chesternut, supra*, 486 U.S. at p. 573 [100 L.Ed.2d at pp. 571-572].) *Mendenhall* had held that the police can be said to have seized an individiual "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed

that he was not free to leave." (*Mendenhall, supra,* at p. 554 [64 L.Ed.2d at p. 509].)

Applying the *Mendenhall* test to the facts in *Chesternut,* the court concluded that the defendant was not seized by the police "before he discarded the packets containing the controlled substance." (*Michigan* v. *Chesternut, supra,* 486 U.S. at p. 574 [100 L.Ed.2d at p. 572].) ▪ The court commented that even the characterization by the police officer of his conduct as a "chase," standing alone, did not implicate Fourth Amendment protections.[2] (*Ibid.*) The crucial question is whether the police conduct would have communicated to a reasonable person an attempt to capture or otherwise intrude upon that person's freedom of movement. (*Id.,* at p. 576 [100 L.Ed.2d at p. 573].)

▪ As in the case at bench, the record in *Chesternut* did not reflect that the police activated a siren or flashers, that they displayed any weapons, or that they commanded the defendant to halt. (*Michigan* v. *Chesternut, supra,* 486 U.S. at p. 575 [100 L.Ed.2d at p. 573].) The only significant differences in the facts in the case at bench and the facts in *Chesternut* is that in *Chesternut* the police officer remained in the police car and drove up parallel to a running pedestrian (i.e., the defendant) (*id.,* at p. 569 [100 L.Ed.2d at p. 569]), while in the instant case Officer Ruston had exited his vehicle and followed defendant on foot. The other difference in the respective factual situations is that in *Chesternut* there was no second police car involved, while in the instant case there was a second police vehicle present which assisted in the apprehension. However, the presence of the second police vehicle in the instant case only became a factor *after* the officers had seen defendant discard an object that resembled contraband.

In *Chesternut,* as noted above, a police officer in a marked police vehicle drove alongside appellant as appellant ran down the street during daylight. (*Michigan* v. *Chesternut, supra,* 486 U.S. at p. 569 [100 L.Ed.2d at p. 569].) The Supreme Court held that such conduct was "not 'so intimidating' that [appellant] could reasonably have believed that he was not free to disregard the police presence. . . ." (*Id.,* at p. 576 [100 L.Ed.2d at p. 573].) In the instant case, the circumstances were less intimidating than those which were found "not 'so intimidating'" in *Chesternut.* (*Ibid.*) Although Officer Ruston was wearing a police raid jacket, he was initially seated in a darkened, unmarked vehicle. His eye contact with defendant was brief.

---

[2] The subjective intent of the police officers in pursuing a person is only relevant to an assessment of the Fourth Amendment implication of police conduct "to the extent that that intent has been conveyed to the person confronted." (*Michigan* v. *Chesternut, supra,* 486 U.S. at p. 575, fn. 7 [100 L.Ed.2d at p. 573].)

In the instant case, defendant took off running before the police even stopped and left their vehicles. The court concluded that defendant's flight was voluntary and not the result of any action on behalf of the police. The trial court specifically stated, "So it appears to me that the evidence shows that the defendant voluntarily ran."

Applying *Chesternut* to the instant case, defendant began running before Officer Ruston even got out of his car. When defendant broke into a run, there were no objective facts by which he could have believed he was not free to leave or even that Officer Ruston was a police officer. Moreover, there was no indication that defendant knew Officer Ruston was following him. When defendant discarded the cocaine shortly after he began running, there were no objective facts upon which defendant could have believed he was not free to leave.

The court's finding is entirely consistent with the evidence, and the evidence is conclusive. Defendant approached the second individual and was removing his hand from his pocket when he first noticed Officer Ruston. Defendant, for no apparent reason, turned and ran. Officer Ruston stated that he had only briefly noticed defendant before defendant took off running.

There was no detention before defendant discarded the cocaine. Officer Ruston, in an unmarked car, had made nothing but eye contact with defendant, and that for only a brief moment. When defendant began running, there was no contact or detention by the police. The court found that, based on the facts, there was no detention until either the police officer ordered defendant to stop or the second police car pulled in front of him. Moreover, the court further found that it was just as likely that defendant believed Officer Ruston was an authority figure, other than the police, whom defendant was seeking to avoid. In essence, the court found that there were no objective facts which could have led defendant to believe the police were pursuing him before he ran or the officers actually attempted to stop him. There is substantial evidence supporting the factual findings of the trial court. Accordingly, the findings must be upheld.

Defendant has cited several California appellate decisions in support of his position.[3] All of those decisions predate *Chesternut,* which was decided

---

[3] Those decisions are *In re Tony C.* (1978) 21 Cal.3d 888 [148 Cal.Rptr. 366, 582 P.2d 957]; *People* v. *Menifee* (1979) 100 Cal.App.3d 235 [160 Cal.Rptr. 682]; *People* v. *Patrick* (1982) 135 Cal.App.3d 290 [185 Cal.Rptr. 325]; *People* v. *Aldridge* (1984) 35 Cal.3d 473 [198

by the United States Supreme Court on June 13, 1988. (*Michigan* v. *Chesternut, supra*, 486 U.S. 567.) Respondent has called to our attention two post-*Chesternut* decisions: *In re Hodari D.* ▮ (Cal.App.) and *People* v. *Brown* (1990) 216 Cal.App.3d 1442 [265 Cal.Rptr. 552]. As respondent properly points out, in none of these cases did the reviewing court find that the particular "police conduct amounted to a detention when the evidence was seized after it was discarded, or, if they found a detention, they found there was no taint of the evidence."

The California Supreme Court denied review of *In re Hodari D., supra*, on March 15, 1990, and ordered it not officially published. The other post-*Chesternut* decision, *People* v. *Brown, supra*, 216 Cal.App.3d 1442, can be distinguished from the instant case on a factual basis. In *Brown* the reviewing court affirmed the denial of the defendant's motion to suppress the contents of a paper bag which was dropped by the defendant *after* he was ordered to "[s]top." (*Id.*, at pp. 1446, 1452.)

In *Brown*, police officers had observed defendant standing outside a dance hall holding out the bag to a group of people. (*People* v. *Brown, supra*, 216 Cal.App.3d at p. 1450.) When the officers were noticed, some of the people yelled "roller" (a street reference to a patrol car), and the group dispersed. (*Ibid.*) The officers returned about five minutes later and defendant was again in front of the dance hall. (*Ibid.*) He walked quickly inside, the officers called out, "Stop," and an officer followed him, whereupon defendant dropped his bag and tried unsuccessfully to escape. (*Id.*, at p. 1446.) The bag proved to contain rock cocaine. (*Id.*, at p. 1446.) The trial court denied defendant's motion to suppress. (*Ibid.*) The Court of Appeal affirmed, holding that the trial court did not err in denying the suppression motion. The court held that a reasonable officer would have concluded that defendant was engaged in criminal activity, namely selling drugs. (*Id.*, at p. 1450.) Therefore, the court held, defendant's detention, which occurred at the point at which defendant was told to stop and was followed into the dance hall, was based on reasonable cause, and the abandonment of the bag was not the fruit of an illegal detention. (*Id.*, at p. 1451.)

In summary, we have concluded that because of the great similarity of the facts in *Chesternut* to the facts in the instant case, the *Chesternut* determination of no detention until after the discard of contraband is controlling in the case at bench. The trial court's findings are supported by

Cal.Rptr. 538, 674 P.2d 240]; and *People* v. *Washington* (1987) 192 Cal.App.3d 1120 [236 Cal.Rptr. 840].

substantial evidence in the record and also by applicable federal and California law. Therefore the judgment of the lower court is affirmed.

McDaniel, Acting P. J., and Dabney, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 30, 1990. Arabian, J., was of the opinion that the petition should be granted.