Filed 7/11/13  P. v. Negrete CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>JESUS GARIBAY NEGRETE,<br><br>　　　　Defendant and Appellant. | A135144<br><br>(Napa County<br>Super. Ct. No. CR159257) |

Following an unsuccessful motion to suppress, a jury convicted defendant Jesus Garibay Negrete of one count of possession of methamphetamine for sale.  (Health & Saf. Code, § 11378.)  On appeal, defendant challenges the ruling on his suppression motion.  He argues that the evidence implicating him was the product of an unlawful detention.  We disagree and affirm the judgment.

## I.  BACKGROUND

### A.  *Suppression Hearing Testimony*

The parties developed the historical facts at the suppression hearing through the testimony of Napa Police Officer Nick Dalessi.

Officer Dalessi was on patrol with Sergeant Pat Manzer on October 26, 2011, and at approximately 5:30 p.m. they travelled through the Laurel Street Apartments in the 2500 block of Laurel Street.  The officers were in an unmarked vehicle.  At that time, Officer Dalessi saw a group of men standing around a trash can playing cards and drinking beer.

1

Officer Dalessi parked the car about 20 to 25 feet from the men and he and Sergeant Manzer got out of the car. Both officers were wearing "police raid attire," with the words "Police" clearly marked on their clothes in several locations. The officers' badges were displayed on the vests they wore. Officer Dalessi began to walk around the area where the men were playing cards and drinking beer. Officer Dalessi then walked towards the men and essentially "walked in a circle around the group checking to make sure no one had any weapons or contraband or anything." He saw numerous cans of Budweiser in and around that area and a partially full 18-pack of beer in a separate garbage bag next to where the men were standing. Sergeant Manzer also walked around "kind of looking around to see if any weapons were in the area and what was going on." When defense counsel asked whether Sergeant Manzer "was also circling the group," Officer Dalessi replied, "I couldn't say circling but walking around."

Officer Dalessi recognized appellant as one of the men playing cards and drinking beer. Officer Dalessi focused his attention on appellant and walked up to him. Sergeant Manzer was standing close by. Officer Dalessi asked appellant, in English, how he was doing, and began speaking with appellant in English. Officer Dalessi also asked appellant, in English, if he was still on probation. Appellant said that he was not on probation. Officer Dalessi smelled alcohol on appellant and thought that appellant was under the influence.

Officer Dalessi noticed a maroon-colored Ford Expedition SUV parked nearby. Because Officer Dalessi had previously had contact with appellant in that vehicle, the officer asked appellant, in English, if he was still driving it. Appellant, in English, replied negatively, and explained that his wife now drove the Expedition, while he drove the white Ford Mustang that was parked nearby.

Officer Dalessi next asked appellant, in Spanish, if he had any drugs, guns, or knives on him. Appellant said no, in Spanish. Officer Dalessi then asked appellant, in English, if he could search him. Appellant responded by putting "both of his hands up in the air kind of about shoulder width and shook his head up and down yes." Officer Dalessi had no reason to think appellant did not understand him.

2

Officer Dalessi then had appellant place his hands behind his back and began searching him. Inside appellant's left front pants pocket Officer Dalessi found a cigarette box. Underneath the foil of the box was a white piece of plastic that had been melted on the top to seal its contents. Officer Dalessi opened the plastic and found a crystalline substance that he suspected was methamphetamine.

Appellant also had two sets of car keys in his right front pants pocket—one set for the Mustang and one for the Ford Expedition SUV. Officer Dalessi asked appellant in English if he could search his vehicle. Appellant may have said yes, but definitely nodded his head up and down "in a yes fashion." Officer Dalessi used the keys to unlock the SUV and searched it. He explained: "As I unlocked the driver side door I looked off to the right. Slightly behind the driver seat kind [of] in the doorjamb area off to the right I located another white larger piece of plastic which appeared to be the same type of plastic that contained the contents of methamphetamine that I had found in [appellant's] pocket. I opened that larger white piece of plastic and located ten additional baggies that had been melted at the top to seal the contents which contained I believed to be suspected methamphetamine." Officer Dalessi seized the items.

Officer Dalessi asked Sergeant Manzer to handcuff appellant. Sergeant Manzer complied, and Officer Dalessi walked appellant to the unmarked police car and radioed for a Spanish-speaking police officer to assist in translation. Officer Salem responded within 10 minutes or so, read appellant his *Miranda*[1] rights in Spanish, and subsequently interviewed him in Spanish.

During the officers' interaction with appellant they did not point a gun at him or use force upon him.

### B. *Argument and Trial Court Ruling*

Following Officer Dalessi's testimony, defense counsel argued appellant was subjected to an unlawful detention, arguing: "Here two officers parked a car very near [appellant]. It was near dark. They were wearing raid attire. One officer circled the

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

group while the other stood nearby possibly walking around the group as well. The attention was focused specifically on [appellant]. He was asked about guns, drugs, or knives in Spanish. A bunch of other stuff was said in English. And I don't think under those circumstances a reasonable person would feel free to terminate the encounter and walk away. [¶] And certainly there was no objective reasonable basis to suspect him of criminal activity at that time. So I don't think there was a lawful basis for the detention and the motion should be granted on those grounds."

Appellant argued that the consent he gave Officer Dalessi to search his person and vehicle was invalid as a result of the unconstitutional detention. Appellant not only sought suppression of any and all evidence seized during the searches as the fruit of the illegal detention, but additionally sought suppression of the statements he later gave to Officer Salem as fruit of the illegal detention. Appellant also argued that even if his encounter with police constituted a consensual encounter, not a detention, suppression of the methamphetamine seized during the searches of his person and vehicle was still in order because he involuntarily consented to those searches. Citing the language barrier, the nonverbal, ambiguous alleged consent, the testimony that appellant was under the influence of alcohol, and other factors, defense counsel argued the prosecution failed to meet its burden of proving that appellant had freely and voluntarily consented to the searches at issue.

The prosecution argued that the initial encounter between appellant and Officer Dalessi was consensual, not a detention that required suspicion of wrongdoing by appellant on the part of the officer. "Officer Dalessi did nothing that converted this consensual encounter into a detention until he arrested [appellant], but only after seizing the drugs from his person and vehicle." The prosecution also argued that appellant voluntarily consented to the searches.

The trial court ruled that appellant gave his consent to the searches at issue during a consensual encounter, not a detention. The court focused on whether appellant voluntarily consented to the searches. The court found that appellant did voluntarily consent and denied the motion to suppress. The trial court issued the

4

following ruling from the bench: "Officer Dalessi was only one officer of two, and so it's two officers not six or ten or anything that would really be extreme in determining consent. And he's in a group of people in this neighborhood. And he asks . . . if the defendant, who he recognizes, has guns, drugs, or knives. [Appellant] indicates no. That indicates to me that he understood the question. I realize some is in Spanish some isn't. Then Officer Dalessi asks to search. That's when his hands go up, but he's also nodding yes in the affirmative. That's when contraband is found and then the keys are found, and he's asked if he could search the SUV and again the answer is yes. [¶] I think the conduct implies consent. And he also is stating, at least the officer thought he also said yes, but he definitely nods his head in the affirmative up and down. So I think it's a consensual encounter. And I think it's voluntary both as to the defendant's person and as to the car [.] I think [they] were proper consent searches. So I will deny the motion to suppress."

## II. DISCUSSION

### A. *Standard of Review*

We employ a two-tiered standard of review when evaluating a challenge to a ruling on a motion to suppress evidence. First, "[w]e defer to the trial court's factual findings, express or implied, where supported by substantial evidence." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) Second, in determining if, on the facts so found, a seizure occurred, and whether that seizure was reasonable, "we exercise our independent judgment." (*Ibid.; People v. Nickleberry* (1990) 221 Cal.App.3d 63, 68.) With respect to factual conflicts in the evidence, it is the superior court, not the reviewing court, that "is vested with the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences in deciding whether a search is constitutionally unreasonable." (*People v. Woods* (1999) 21 Cal.4th 668, 673.) Consequently, on appeal, we consider the record in "the light most favorable" to the judgment below, and " 'all factual conflicts must be resolved in the manner most favorable to the [superior] court's disposition on the [suppression] motion.' " (*Ibid.; In re Arturo D.* (2002) 27 Cal.4th 60, 77.)

5

**B.     *The Trial Court Properly Denied the Motion to Suppress***

Our Supreme Court has explained that "[p]olice contacts with individuals" can be placed into "three broad categories ranging from the least to the most intrusive": (i) "consensual encounters that result in no restraint of liberty whatsoever"; (ii) "detentions, which are seizures of an individual that are strictly limited in duration, scope, and purpose"; and (iii) "formal arrests or comparable restraints on an individual's liberty." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.)  The traditional dividing line between a consensual encounter and a seizure is that a seizure occurs when, in view of all the circumstances, " 'a reasonable person would have believed that he was not free to leave.' " (*Wilson v. Superior Court* (1983) 34 Cal.3d 777, 790.)  While a consensual encounter requires no justification under the Fourth Amendment  (*In re Manuel G., supra,* 16 Cal.4th at p. 821), a person may not be seized or detained "*even momentarily* without reasonable, objective grounds for doing so." (*Florida v. Royer* (1983) 460 U.S. 491, 498 (plur. opn. of White, J.), italics added; *People v. Hughes* (2002) 27 Cal.4th 287, 327 [" 'consensual encounters' " "are those police-individual interactions which result in no restraint of an individual's liberty whatsoever—i.e., no 'seizure,' *however minimal*— and which may properly be initiated by police officers even if they lack any 'objective justification,' " italics added].)

Here, appellant maintains that the police detained him without reasonable suspicion before he consented to the searches of his person and his vehicle and, because his consent resulted from an illegal detention, the fruits of those searches must be suppressed.  The People do not contend that the officers had reasonable suspicion to justify a detention of appellant when they approached him in the parking lot. Consequently, the only issue before us is whether the officers' contact with appellant constituted a consensual encounter, which was lawful without reasonable suspicion of criminal activity, or a detention that was unlawful because it was not supported by reasonable suspicion.

"The United States Supreme Court has made it clear that a detention does not occur when a police officer merely approaches an individual on the street and asks a few

6

questions. [Citation.] As long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and no reasonable suspicion [of criminal activity] is required on the part of the officer. Only when the officer, by means of physical force or show of authority, in some manner restrains the individual's liberty, does a seizure occur. [Citations.] '[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.' [Citation.] This test assesses the coercive effect of police conduct as a whole, rather than emphasizing particular details of that conduct in isolation. [Citation.] Circumstances establishing a seizure might include any of the following: the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled. [Citations.] The officer's uncommunicated state of mind and the individual citizen's subjective belief are irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred." (*In re Manuel G., supra,* 16 Cal.4th at p. 821.)

Here, Officer Dalessi did not coerce appellant to submit to questioning or to give his consent to a search "by means of physical force or a show of authority." (*United States v. Mendenhall* (1980) 446 U.S. 544, 553.) The officer approached appellant while he and a group of men were playing cards and drinking beer in an apartment parking lot. He walked around the group to check for weapons and/or contraband, but he did not block or otherwise impede appellant's movement. Similarly, there is no indication that Sergeant Manzer blocked or restrained appellant's movements. While the officers walking around near appellant might cause a reasonable person to feel himself the object of official scrutiny, such directed scrutiny did not amount to a detention. (See, e.g., *People v. Perez* (1989) 211 Cal.App.3d 1492, 1496 [police officer did not detain defendant when he parked his patrol car in front of defendant's vehicle, and left room for defendant to leave]; *People v. Franklin* (1987) 192 Cal.App.3d 935, 940 [no detention

7

where officer spotlighted defendant and pulled up to the curb in his patrol car behind defendant].)  The questions Officer Dalessi asked appellant were nonaccusatory, routine, and brief.  That the officers were dressed in "raid attire" is a factor that has " 'little weight in the analysis' for determining whether a seizure occurred."  (*People v. Zamudio* (2008) 43 Cal.4th 327, 346, quoting *United States v. Drayton* (2002) 536 U.S. 194, 204.)  The officers did not charge at appellant, draw their weapons, or tell appellant that they thought he was involved in criminal conduct.  (See, e.g., *Wilson v. Superior Court, supra,* 34 Cal.3d at pp. 790-791 [a reasonable person, when confronted by a narcotics officer and accused of importing illegal drugs into the state, would not feel free to leave or otherwise terminate the encounter].)  At no time did Officer Dalessi tell appellant that he was required to answer his questions or consent to a search.  Under these circumstances, a reasonable person would have believed he was free to leave or deny the officer's requests.

Although not directly addressed on appeal, below appellant emphasized the language barrier and his apparent intoxication as negating his consent.  Such circumstances are certainly part of the relevant totality of the circumstances.  However, the record amply demonstrates that appellant appeared to understand the questions directed to him.  When Officer Dalessi asked him if he could search him, appellant responded by putting both his hands in the air and nodding his "head up and down yes."  Other responses to Officer Dalessi's questions similarly evince appellant's grasp of the conversation:  appellant stated that he was no longer on probation, and explained that his wife drove the maroon SUV, and he drove the white Ford Mustang.  (See, e.g., *United States v. Sanchez* (8th Cir. 1998) 156 F.3d 875, 878 [defendant's limited English skills did not vitiate consent]; *United States v. Contreras* (8th Cir. 2004) 372 F.3d 974, 977 [same].)  If indeed appellant did not consent to the searches, Officer Dalessi reasonably believed otherwise.  (See *United States v. Pena-Ponce* (8th Cir. 2009) 588 F.3d 579, 584 [officer reasonably believed that defendant who "spoke only broken English" consented to search]; see also *United States v. Vongxay* (9th Cir. 2010) 594 F.3d 1111, 1120 [defendant's act of raising his hands to his head constituted implied consent to search].)

8

Finally, although the record reveals that appellant appeared to be under the influence of alcohol, nothing indicates that appellant was incoherent or otherwise lacked capacity to consent. (See *United States v. George* (9th Cir. 1993) 987 F.2d 1428, 1430-1431 [consent voluntary even though defendant "was a sick young man" in weakened condition in emergency room following heroin overdose].)

Thus, under the totality of the circumstances, we conclude Officer Dalessi's encounter with appellant was consensual, and appellant's consent to the search of his person and his vehicle was not the product of an illegal detention. Accordingly, the trial court properly denied the appellant's motion to suppress evidence.

### III. DISPOSITION

The judgment is affirmed.

_____
REARDON, ACTING P. J.

We concur:

_____
RIVERA, J.

_____
HUMES, J.

9